IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ILIS COMPUTER, INC., <br> a Delaware corporation, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | C.A. No. 07-285-JJF |
| BLUELINE INTERNATIONAL, LLC, <br> an Ohio limited liability company, | ) <br> ) <br> ) | |
| Defendant. | ) | |

**OPENING BRIEF OF DEFENDANT BLUELINE INTERNATIONAL, LLC
IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER**

David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for defendant BlueLine
International, LLC

Dated: July 5, 2007

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      ILIS HAS NOT ESTABLISHED A BASIS FOR DIVERSITY JURISDICTION
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     THERE IS NO BASIS FOR THE ASSERTION OF PERSONAL JURISDICTION
        OVER BLUELINE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

                A.      10 DEL. C. §3104(C)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                B.      10 DEL. C. §3104(C)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                C.      10 DEL. C. §3104(C)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                D.      10 DEL. C. §3104(C)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                E.      ILIS IS NOT ENTITLED TO JURISDICTIONAL DISCOVERY 10

III.    THIS ACTION SHOULD BE DISMISSED OR TRANSFERRED IN LIGHT OF
        THE FORUM SELECTION CLAUSE BETWEEN THE PARTIES. . . . . . . . . . 11

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

i

# TABLE OF AUTHORITIES

## Cases

*Blue Ball Properties, Inc. v. McClain*, 658 F.Supp. 1310 (D. Del. 1987). . . . . . . . . . . . . . 7

*Brock v. Entre Computer Systems, Inc.*, 740 F.Supp. 428 (E.D. Tex 1990). . . . . . . . . . . 11

*Chadwick v. Metro Corp., Inc.*, Del. Supr., No. 44, 2004, 2004 WL 1874652 (Aug. 12, 2004), *disposition reported at* 856 A.2d 1066 (2004) (TABLE). . . . . . . . . . . . . . . . . . . . 8

*Deerfield Hutterian Ass'n v. Ipswich Bd. of Educ., Ipswich Ind. School Dist. 22-3*, 444 F.Supp. 159 (D.S.D. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Department of Recreation and Sports of Puerto Rico v. World Boxing Association*, 942 F.2d 84 (1st Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates,* 197 F.R.D. 112 (D. Del. 2000), *aff'd in part, dismissed in part*, 296 F.3d 187 (3rd Cir. 2001). . . . . . . . . . . . 6

*Franceskino v. Womack*, No. CIV.3:01CV1835 (AVC), 2002 WL 100602, Covello, J. (D. Conn. Jan. 25, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F.Supp.2d 268 (D. Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*J. Royal Parker Associates, Inc. v. Parco Brown & Root, Inc.*, C.A. No. 7013, 1984 WL 8255, Berger, V.C. (Del. Ch. Nov. 30, 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Joint Stock Society v. Heublein*, 936 F.Supp. 177 (D. Del. 1996). . . . . . . . . . . . . . . . . . . 6

*Mellon Bank East (PSFS), Nat'l Ass'n v. Farino*, 960 F.2d 1217 (3rd Cir. 1992). . . . . . . 7

*Nagel v. Crain Cutter Co., Inc.*, 184 N.W.2d 876 (Wis. 1971). . . . . . . . . . . . . . . . . . . . . . 9

*Ohrstrom v. Harris Trust Co. of New York*, C.A. No. 15709, 1998 WL 8849, Chandler, C. (Del. Ch. Jan. 8, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Powder Power Tool Corp. v. Powder Actuated Tool Co.,*  230 F.2d 409 (7th Cir. 1956). . 4

*Ramada Inns, Inc. v. Drinkhall*, Del. Super., C.A. No. 83C-AU-56, 1984 WL 247023, Taylor, J. (May 17, 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Silvestre v. De Loaiza*, 820 N.Y.S.2d 440 (N.Y. Sup. 2006). . . . . . . . . . . . . . . . . . . . . . . 11

*State Farm Mut. Ins. Co. v. Greater Chiropractic Service Corp.*, 393 F.Supp.2d 1317 (M.D. Fla. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Stephens v. Entre Computer Centers, Inc.*, 696 F.Supp. 636 (N.D. Ga. 1988). . . . . . . . . 11

*Telcordia Technologies, Inc. v. Alcatel S.A.*, No. Civ. A. 04-874 GMS, 2005 WL 1268061, Sleet, J. (D. Del. May 27, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Terra Intern., Inc. v. Mississippi Chemical Corp.*, 922 F.Supp. 1334 (N.D. Iowa 1996), *aff'd*, 119 F.3d 688 (8th Cir.), *cert. denied*, 522 U.S. 1028 (1997). . . . . . . . . . . . . . . . . . . . . . . 11

*Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3rd Cir. 2003). . . . . . . . . . . . . . . . . . 10

*Transportes Aeros de Angola v. Ronair, Inc.*, 544 F.Supp. 858 (D. Del. 1982). . . . . . . . . 6

*Vogt-Nem, Inc. v. M/V Tramper*, 263 F.Supp.2d 1226 (N.D. Cal. 2002). . . . . . . . . . . . . 11

## Other authorities

10 Del. C. §3104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

10 Del. C. §3104(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10 Del. C. §3104(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10 Del. C. §3104(c)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10 Del. C. §3104(c)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. §1332(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. §1332(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. §1404(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Federal Rule of Civil Procedure 12(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff ILIS Computer, Inc., a Delaware corporation ("ILIS") filed the present action on May 24, 2007, asserting breach of a confidentiality agreement.

Defendant BlueLine International, LLC, an Ohio limited liability company ("BlueLine"), filed a motion to dismiss or transfer on July 5, 2007.  This is Blueline's opening brief in support of that motion.

1

## SUMMARY OF ARGUMENT

1.      This Court lacks subject matter jurisdiction over this action. Although purportedly brought pursuant to diversity jurisdiction, as ILIS is a start-up entity and there is no suggestion of lost sales or any other non-speculative pecuniary injury arising from the alleged disclosure of confidential information, ILIS is not able to satisfy the "amount in controversy" requirement of 28 U.S.C. §1332(a).

2.      This Court lacks personal jurisdiction over BlueLine.  BlueLine has not transacted any business or performed any character of work or service in the State, contracted to supply services or things in Delaware, committed (or been accused of) any tortious act in Delaware, and has not regularly done or solicited business or engaged in any other persistent course of conduct in Delaware or derived substantial revenue from services, or things used or consumed in Delaware.

3.      This Court should uphold the venue selection provision in the underlying contract between the parties, as ILIS' claim derives from the commercial relationship between the parties established by that underlying contract, and either dismiss this action or transfer it to the United States District Court for the Southern District of Ohio, in Columbus, Franklin County.

## STATEMENT OF FACTS

ILIS is a Delaware corporation that manufactures computer desktops, notebooks and accessories. (Compl. ¶¶4, 12).

BlueLine is an Ohio limited liability company that designs and builds websites. (*Id.* ¶¶5, 14).

On or about June 10, 2005, ILIS and BlueLine entered into a contract for BlueLine to design a website for ILIS' business. (*Id.* ¶14). To facilitate such development, on June 20, 2007, ILIS and BlueLine entered into confidentiality and non-disclosure agreement (the "Confidentiality Agreement"). (*Id.* ¶15).

Pursuant to the Confidentiality Agreement, and in furtherance of the development of ILIS' website, ILIS provided BlueLine with certain confidential information. (*Id.* ¶17). ILIS claims that BlueLine, without authorization, showed the confidential information to individuals assisting in building the website. (*Id.* ¶¶23-33).

## ARGUMENT

### I.    ILIS HAS NOT ESTABLISHED A BASIS FOR DIVERSITY JURISDICTION.

ILIS purports to bring this action between a Delaware corporation and an Ohio limited liability company based on diversity of citizenship under 28 U.S.C. §1332(a)(1). Pursuant to that statute, in order to establish diversity, plaintiff must establish not only that the opposing parties are of different states, but also that the amount in controversy exceeds $75,000.00.

ILIS makes the naked assertion that "the amount in controversy in this matter exceeds $250,000, exclusive of costs and interests." (Compl. ¶7).  However, the mere allegation of satisfaction of the jurisdictional amount, when challenged, is insufficient, and the burden is on ILIS to substantiate its claim. *Powder Power Tool Corp. v. Powder Actuated Tool Co.,* 230 F.2d 409, 414 (7th Cir. 1956); *Deerfield Hutterian Ass'n v. Ipswich Bd. of Educ., Ipwsich Ind. School Dist. 22-3*, 444 F.Supp. 159, 162 (D.S.D. 1978).

ILIS does not explain how it arrived at this figure.  ILIS does not claim that its business has been destroyed by the alleged limited disclosure of its alleged trade secrets. ILIS does not allege that anyone who allegedly was exposed to the alleged trade secrets has used said trade secrets to ILIS' disadvantage.  ILIS does not allege any facts showing lost sales, lost customers or any pecuniary loss as a result of the alleged misconduct.  Indeed, it appears that ILIS is a start-up that has not even begun selling its products. (Declaration of Tareq Bhuiyan ("Bhuiyan Decl.") ¶8, appended hereto as Exhibit A).

Where, as here, the figure is not based on any defined loss, but merely appears to be an arbitrary figure pulled out of thin air, ILIS is obligated to prove by a preponderance of the

4

evidence that its claim meets the jurisdictional minimum. *State Farm Mut. Ins. Co. v. Greater Chiropractic Service Corp.,* 393 F.Supp.2d 1317, 1323-24 (M.D. Fla. 2005). The burden is on ILIS to plead facts sufficient to show that the jurisdictional amount has been satisfied. *Department of Recreation and Sports of Puerto Rico v. World Boxing Association*, 942 F.2d 84, 88 (1st Cir. 1991). "Any claimed value that cannot be reduced to a monetary standard without unsupported speculation cannot be used to satisfy the jurisdictional minimum." *State Farm Mut. Ins. Co.,* 393 F.Supp.2d at 1323.

As ILIS has not alleged any facts supporting its conclusory statement as to the jurisdictional amount, ILIS is obligated to come forth with evidence establishing by a preponderance of the evidence that his claim is susceptible of non-speculative damages above the jurisdictional threshold.

## II.   THERE IS NO BASIS FOR THE ASSERTION OF PERSONAL JURISDICTION OVER BLUELINE.

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss defendants from a case upon motion when the court lacks personal jurisdiction over them.  *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates*, 197 F.R.D. 112, 119 (D. Del. 2000), *aff'd in part, dismissed in part*, 296 F.3d 187 (3rd Cir. 2001).

In determining whether personal jurisdiction exists, the Court must engage in a two-step analysis.  First, the Court must decide whether jurisdiction is authorized by the laws of the forum state.  *Transportes Aeros de Angola v. Ronair, Inc.*, 544 F.Supp. 858, 864-65 (D. Del. 1982).  Thus, Delaware's long-arm statute, 10 Del. C. §3104 must first be triggered.

If the first test is satisfied, the Court must then determine whether there are "minimum contacts" between the defendant and the forum state such that exercising jurisdiction comports with fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.  *Id.*

The burden is on ILIS, as plaintiff, to allege facts sufficient to make a *prima facie* showing over BlueLine, an Ohio limited liability company.  *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F.Supp.2d 268, 270-71 (D. Del. 2001).  To meet this burden, ILIS must allege facts which "'establish with reasonable particularity'" that jurisdiction over BlueLine exists.  *Id.* (quoting *Joint Stock Society v. Heublein*, 936 F.Supp. 177, 193 (D. Del. 1996)).

As demonstrated below, ILIS is not able to meet this standard.

A.    **10 DEL. C. §3104(C)(1).**

ILIS first invokes Section 3104(c)(1), which allows personal jurisdiction in Delaware where the defendant "transacts any business or performs any character of work or service in the State." (Compl. ¶  No  member, manager or employee of BlueLine has ever traveled to Delaware in connection with any BlueLine business. (Bhuiyan Decl. ¶2).

Moreover, merely contracting with a Delaware resident does not constitute transacting business in Delaware. *Mellon Bank East (PSFS), Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3rd Cir. 1992); *Blue Ball Properties, Inc. v. McClain*, 658 F.Supp. 1310, 1315 (D. Del. 1987).  As such, in the absence of any evidence of any physical presence in Delaware by BlueLine in the negotiation or performance of any agreement between the parties, Section 3104(c)(1) does not provide a basis for the exercise of personal jurisdiction.

B.    **10 DEL. C. §3104(C)(2).**

ILIS also invokes Section 3104(c)(2), which authorizes the assertion of personal jurisdiction over one who "contracts to supply services or things in this State." (Compl. ¶8).

The contract at issue in this action is the Confidentiality Agreement, which does not require BlueLine to supply any services or things in Delaware.  Moreover, the underlying contract does not require any services to be performed in Delaware.  (Bhuiyan Decl. Ex. A).

As no goods or services were provided or performed in Delaware pursuant to the Confidentiality Agreement or the underlying contract, Section 3104(c)(2) is inapplicable.

7

C.    **10 DEL. C. §3104(C)(3).**

ILIS next claims that jurisdiction is proper pursuant to Section 3104(c)(3), which permits jurisdiction over an individual or entity who "[c]auses tortious injury in the State by an act or omission in this State." (Compl. ¶9).

This claim fails for two reasons.  First, ILIS is not asserting any tort claim.  It is asserting a breach of contract claim, and so may not rely on provisions of Delaware's Long Arm statute relating to tortious conduct.  *See Franceskino v. Womack*, No. CIV.3:01CV1835 (AVC), 2002 WL 100602, WL Op. at *3, Covello, J. (D. Conn. Jan. 25, 2002).

Second, in *Ramada Inns, Inc. v. Drinkhall*, Del. Super., C.A. No. 83C-AU-56, 1984 WL 247023, Taylor, J. (May 17, 1984), the Court recognized that for Section 3104(c)(3) to apply, the defendant has to be physically present in Delaware when committing the alleged tortious act.  WL Op. at *5. This principle was approved by the Delaware Supreme Court in *Chadwick v. Metro Corp., Inc.*, Del. Supr., No. 44, 2004, 2004 WL 1874652 (Aug. 12, 2004), *disposition reported at* 856 A.2d 1066 (2004) (TABLE).

As noted above, no representative of BlueLine has been physically present in Delaware.  As such, Section 3104(c)(3) is inapposite.

D.    **10 DEL. C. §3104(C)(4).**

Finally, ILIS pins its hopes on Section 3104(c)(4), which permits the assertion of personal jurisdiction where a nonresident "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State."

8

This proposition fails for several reasons. First, as noted in Section C above, sections of the Long Arm statute addressing tortious conduct may not be utilized where the Complaint merely states contractual, and not tort, claims. *Nagel v. Crain Cutter Co., Inc.*, 184 N.W.2d 876, 878 (Wis. 1971) (rejecting application of similar provision to contract claim).

Second, any revenue generated by BlueLine for services it performs in Ohio for Delaware residents does not relate to "services or things used or consumed in the State," as the statute requires. *J. Royal Parker Associates, Inc. v. Parco Brown & Root, Inc.*, C.A. No. 7013, 1984 WL 8255, WL Op. at *3, Berger, V.C. (Del. Ch. Nov. 30, 1984) (contract performed outside of Delaware not subject to Section 3104(c)(4)). *See also Ohrstrom v. Harris Trust Co. of New York*, C.A. No. 15709, 1998 WL 8849, WL Op. at 4 n.21, Chandler, C. (Del. Ch. Jan. 8, 1998) ("[b]ecause Harris Trust provides no services in Delaware, it cannot 'derive[] substantial revenues from services performed in Delaware'").

Additionally, BlueLine's Delaware-related revenues are derived from only two transactions with two customers. (Bhuiyan Decl. ¶4). These transactions do not constitute "substantial revenue" under Section 3104(c)(4). *Id.* (statute not satisfied where revenue from Delaware does not derive from a persistent course of dealing).

For these reasons, Section 3104(c)(4) does not provided a basis for the assertion of personal jurisdiction over BlueLine.

As none of the provisions of Section 3104 are applicable, the Court need not address the issue of whether the assertion of personal jurisdiction offends the Due Process clause of the Constitution of the United States.

9

E.    <u>**ILIS IS NOT ENTITLED TO JURISDICTIONAL DISCOVERY.**</u>

Blueline anticipates that ILIS will request the opportunity to take jurisdictional

discovery. However, in order to obtain such discovery:

> "[t]he court must be satisfied that there is some indication that
> this particular defendant is amenable to suit in this forum."
> For example, "a plaintiff may not rely on the bare allegations
> in his complaint to warrant further discovery." Likewise, "a
> mere unsupported allegation that [a] defendant 'transacts
> business' in an area is 'clearly frivolous.'" Rather, "there
> must be *some* competent evidence to demonstrate that
> personal jurisdiction over [a] defendant might exist before
> allowing discovery to proceed." Furthermore, "[w]hen the
> lack of personal jurisdiction is clear, ... further discovery
> serves no purpose and should be denied."

*Telcordia Technologies, Inc. v. Alcatel S.A.*, No. Civ. A. 04-874 GMS, 2005 WL 1268061,

WL Op. at *9, Sleet, J. (D. Del. May 27, 2005) (citations omitted, italics in original).

Before granting jurisdictional discovery, ILIS, Mr. Christ must make some non-

speculative factual assertions that suggest with reasonable particularity the possible existence

of the requisite contacts between the defendants and Delaware. *Toys 'R' Us, Inc. v. Step

Two, S.A.*, 318 F.3d 446, 456 (3rd Cir. 2003). He has not done so and cannot do so, and so

the expense of jurisdictional discovery is not justified here.

### III.    THIS ACTION SHOULD BE DISMISSED OR TRANSFERRED IN LIGHT OF THE FORUM SELECTION CLAUSE BETWEEN THE PARTIES.

Section 7 of the contract between ILIS and BlueLine states, in pertinent part, that "[r]egardless of the place of signing of this agreement, the client agrees that for purposes of venue, the contract was entered into in Franklin County, Ohio, and any dispute will be litigated or arbitrated in Franklin Count[]y, Ohio." (Bhiuyan Decl. Ex. A §7).[1]

ILIS will likely point out that the Confidentiality Agreement is a separate agreement without a similar venue provision. Nonetheless, courts have routinely applied contractual venue provisions to extra-contractual claims, where those claims arose directly or indirectly from the business relationship evidenced by a contract with a venue provision, where the language of the venue provision is broad. *E.g., Stephens v. Entre Computer Centers, Inc.*, 696 F.Supp. 636, 648 (N.D. Ga. 1988) (venue provision covering "any action" and without limiting language such as "arising under or in connection with deemed to include tort claims); *Brock v. Entre Computer Systems, Inc.*, 740 F.Supp. 428, 430 (E.D. Tex 1990). Although these cases involve extra-contractual tort claims, there is no rational reason for not applying the same principle to a related contract claim.

ILIS concedes in its Complaint that the Confidentiality Agreement is closely related to the underlying contract. ILIS alleges that the contract with BlueLine was for website development (Compl. ¶14), and the Confidentiality Agreement was entered into to facilitate

---

[1]

The use of the word "will" means that the venue provision is mandatory. *Silvestre v. De Loaiza*, 820 N.Y.S.2d 440, 444 (N.Y. Sup. 2006); *Vogt-Nem, Inc. v. M/V Tramper*, 263 F.Supp.2d 1226, 1231 (N.D. Cal. 2002); *Terra Intern., Inc. v. Mississippi Chemical Corp.*, 922 F.Supp. 1334, 1373 (N.D. Iowa 1996), *aff'd*, 119 F.3d 688 (8th Cir.), *cert. denied*, 522 U.S. 1028 (1997).

11

BlueLine's performance under the website development contract. (Compl. ¶15). Indeed, although ILIS does not allege that any confidential information was displayed on the website, ILIS assumes that confidential information was disclosed to third parties because ILIS discovered that third parties had assisted in developing ILIS' website. (Compl. ¶¶26, 29). Such assumption is logical only if disclosure of confidential information was material to the creation and development of the website.

In light of ILIS' concessions, ILIS claim is directly related to its business relationship with BlueLine and so should be subject to the venue provision it voluntarily entered into with BlueLine.

The venue provision requires all litigation to be in Franklin County, Ohio. The Court should enforce the forum selection clause and dismiss this action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(2). Alternatively, if the Court elects not to dismiss this action, it should be transferred pursuant to 28 U.S.C. §1404(a) to the United States District Court for the Southern District of Ohio, at its Columbus, Ohio location, which is in Franklin County.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, defendant BlueLine International, LLC respectfully requests that this Court either dismiss this action or, in the alternative, transfer it to the United States District Court for the Southern District of Ohio in its Columbus, Franklin County location.

Dated: July 5, 2007

Respectfully submitted,

 /s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for defendant BlueLine International, LLC

13

## <u>CERTIFICATE OF SERVICE</u>

I, David L. Finger, hereby certify that on this 5th day of July, 2007, I caused the

foregoing document to be electronically filed with the Court via CM/ECF, which caused

electronic notice thereof to be served on the below-listed counsel of record:


Kevin W. Goldstein, Esq.
Michael P. Migliore, Esq.
Stradley Ronon Stevens & Young, LLP
300 Delaware Avenue, Suite 800
Wilmington, DE 19801




/s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ILIS COMPUTER, INC.,                    )
A Delaware corporation,                 )
                                        )
                Plaintiff,              )
                                        )
        v.                              )       C.A. No. 07-285 JJF
                                        )
BLUELINE INTERNATIONAL LLC,             )
an Ohio limited liability company,      )
                                        )
                Defendant.              )

## DECLARATION OF TAREQ BHUIYAN

1.      My name is Tareq Bhuiyan.  I am a member and manager of BlueLine
International LLC, an Ohio limited liability company ("BlueLine"), and am authorized to
make this declaration on its behalf.  I am over twenty-one years of age, and have personal
knowledge of the facts contained in this Declaration.

2.      No member, manager or employee of BlueLine has ever traveled to
Delaware in connection with any BlueLine business.

3.      BlueLine does not possess, have any interest in or manage any real
property located in Delaware.

4.      Out of two hundred customers, BlueLine has only two in Delaware as per
the clients' provided records for their business addresses. Those two companies are: ILIS
Computer, Inc., the plaintiff in this lawsuit, which became a client in 2005 and another
company, which became a client in 2007. In 2005, ILIS Computer, Inc. paid BlueLine
$20,093.90, which is less than 6% of that year's revenue. In 2006, ILIS Computer Inc.
paid BlueLine $25,292.10, which is less than 5.5% of that year's revenue. In 2007, ILIS
Computer, Inc. paid BlueLine $5947.50 and the other company paid $5621.00 and the

payments received from these two companies this year are less than 3% of the projected

yearly revenue of BlueLine.

    5.    I executed the nondisclosure agreement that is at issue in this lawsuit in

Ohio.

    6.    BlueLine has not aimed its marketing efforts specifically at Delaware.

    7.    Attached hereto as Exhibit A is a true and correct copy of the contract

entered into between BlueLine and ILIS Computer, Inc.

    8.    It is my understanding that ILIS Computer, Inc. is a startup business, and

has not yet begun selling its products.

    9.    I declare under penalty of perjury under the laws of the United States and

the State of Delaware, pursuant to 28 U.S.C. §1748, that the foregoing is true and correct.

Executed on this 14th day of June, 2007 in Columbus, Ohio.

_____

Tareq Bhuiyan

Website Proposal for Ilis Computer, Inc.                                    Your Long Term IT Partner



**Here are the steps we follow before the actual website launch:**

**• First Draft of Working Functionality:**
We first present you with the first draft of working functionality on our presentation server location for your approval.

**• Modifications:**
Changes, corrections, and modifications are made as per your requirements.

**• Testing and Debugging:**
Our Quality Assurance Team makes checks again using a bug-tracking system.

**• Final Presentation:**
After successful debugging and testing, we present you with the final draft of the website.

**• Website Launch:**
The website is uploaded on the final server location as specified by you.

**• Final Testing:**
After the final product has been delivered to you, we make final tests to check the smooth functionality of the site.

**Contract** (Please sign and send the following three pages back to us with your down payment)

Our desire is to delight the client. One way is to make clear our understandings with each other. These are the terms of our agreement together:

**1. Authorization.**
The above-named client is engaging BlueLine International, LLC, located at 1029 Dublin Road, Columbus OH, 43215 for the specific project of developing a world wide website to be installed on a hosting server. The client also authorizes BlueLine International, LLC to publicize their completed website to Web search engines, as well as other Web directories and indexes.

**2. Web hosting/Server:**
BlueLine will also be responsible for web server hosting. BlueLine will ensure the maximum availability of the website.

**3. Two Month Code Guarantee:**
BlueLine will give two month of code guarantee to the customer. During the first two month, BlueLine will fix code bugs for free of charge. Additional enhancements are not included in this.

**4. Support:**
If customer wants BlueLine to support the website, a $39.00 fee per hour will be charged.

**5. Changes to Submitted Text**
Please send us your **final text, images and other material**. Time required to make substantive changes to client-submitted stuff after the webpages have been constructed will be additional, billed at the hourly rate ($39/hr).

**6. Completion Date**
BlueLine will provide you a website solution and we will do the job right the first time. Your e-Commerce website will be live within 1 week after the project is completed and approved by the client. Please submit your electronic confirmation to start the project and down payment in timely manner so that we can start the work as quickly as possible. It is very important for us to have your timely feedback and all the text and other material from you to finish the project on time. If feedback is not received from you within 2 days, the project deadline will shift according to that.

**7. Payment of Fees**
Fees to BlueLine International, LLC are due and payable on the following schedule: a non refundable 35% upon signing this contract, a non refundable 35% after design and database is complete and a non refundable 30% after completion. Getting the password of the hosting control panel and advertising the pages to Web search engines and updating occur only after the final payment is made. All payments will be made in US funds. BlueLine will need to have a credit card in file, so that web hosting charges and support charges can be charged to that card. Customer authorizes BlueLine International LLC to charge the credit card for hosting and support charges. The support charges will only be charged, after getting customer's approval to move forward with any changes.

In order for BlueLine International, LLC to remain in business, payments must be made promptly. Delinquent bills will be assessed a $100 charge if payment is not received within 10 days of the due date. If an amount remains delinquent 30 days after its due date, an additional 10% penalty will be added for each month of delinquency. BlueLine International, LLC reserves the right to remove webpages from viewing on the Internet until final payment is made. In case collection proves necessary, the client agrees to pay all fees incurred by that process. This agreement becomes effective only when signed by the client. Regardless of the place of signing of this agreement, the client agrees that for purposes of venue, this contract was entered into in Franklin Country, Ohio, and any dispute will be litigated or arbitrated in Franklin Country, Ohio. Please pay on time.

**8. Copyrights and Trademarks**
The client unconditionally guarantees that any elements of text, graphics, photos, designs, trademarks, or other artwork furnished to BlueLine International, LLC for inclusion in webpages are owned by the client, or that the client has permission from the rightful owner to use each of these elements, and will hold harmless, protect, and defend BlueLine International, LLC and its subcontractors from any claim or suit arising from the use of such elements furnished by the client.

**9. Legal Stuff**
BlueLine International, LLC does not warrant that the functions contained in these webpages will be completely uninterrupted or error-free. In no event will BlueLine International, LLC be liable to the client or any third party for any damages, including any lost profits, lost savings or other incidental, consequential or special damages arising out of the operation of or inability to operate these webpages or website, even if BlueLine International, LLC has been advised of the possibility of such damages. If any provision of this agreement shall be unlawful, void, or for any reason unenforceable, then that provision shall be deemed severable from this agreement and shall not affect the validity and enforceability of any remaining provisions.

Client to Release and Indemnify Blueline International LLC. Client hereby jointly and severally (1) releases, acquits, forgives, and discharges, (2) assumes full responsibility for, and (3) agrees to indemnify, defend and protect Blueline International LLC from and against, any and all actions, suits, proceedings, investigations, claims, demands, judgments, costs (including without limitation costs of settlement), expenses (including without limitation attorneys fees), and/or liabilities of any kind or nature, whether arising in equity or in law and whether of a civil, administrative or criminal nature, that relate to or arise wholly, partially, or arguably from, out of, or in connection with the Client's Website.

Cap on Blueline International LLC Liability. The liability to Client and/or any party affiliated with Client of Blueline International LLC and/or any parties affiliated with Blueline International LLC for any actions, claims, demands, suits, agreements, judgments, costs, expenses, liabilities, and/or proceedings of any kind, that arises out of, resulting from, or in any way connected with, the performance or breach of this Agreement shall in all events be limited to the amount actually paid by Client for the portion of the services involved. This limitation shall apply regardless of the form or nature of the action or the underlying theory of recovery, including without limitation actions premised on breach of contract, negligence, and/or strict liability.

**10. Assignment of Project**
BlueLine International, LLC reserves the right to assign subcontractors to this project to ensure the right fit for the job as well as on-time completion.

**11. Laws Affecting Electronic Commerce**
From time to time governments enact laws and levy taxes and tariffs affecting Internet electronic commerce. The client agrees that the client is solely responsible for complying with such laws, taxes, and tariffs, and will hold harmless, protect, and defend BlueLine International, LLC and its subcontractors from any claim, suit, penalty, tax, or tariff arising from the client's exercise of Internet electronic commerce.

**12. Copyright to Webpages**

Copyright to the finished assembled work of webpages produced by BlueLine International, LLC is owned jointly by client and BlueLine International, LLC. Upon final payment of this contract, the client is assigned rights to use as a website the design, graphics, and text contained in the finished assembled website. BlueLine International, LLC retains the right to display graphics and other Web design elements as examples of their work in its portfolio and put the text "developed by BlueLine" with a link to BlueLine's website on the developed website. BlueLine's written permission is needed if client wants to give the code to any other third party for modification. Client or third party cannot sell or use this code for any other website.

### 13. Work Document
All the work related to this project is defined in the attached proposal. The attached proposal will be considered as addendum to this contract.

### 14. Sole Agreement
The agreement contained in this "Website Design Contract" constitutes the sole agreement between BlueLine International, LLC and the client regarding this website. Any additional work not specified in this contract must be authorized by a written change order. All prices specified in this contract will be honored for two (2) months after both parties sign this contract. Continued services after that time will require a new agreement.

### 15. Payment and Refund Policy
(a) Blueline International LLC To Be Paid For Services Rendered. Notwithstanding anything in this Agreement or the Solution Specifications to the contrary, Client shall be responsible for payment to Blueline International LLC for all Services rendered through the termination date.

(b) Deemed Default by Client for Uncured Billing Problem. If for any reason the billing information provided by Client becomes invalid, or Blueline International LLC cannot for any other reason collect payment due in accordance with this Agreement, Blueline International LLC shall make reasonable efforts to contact the Client in order to give notice of the problem. If Client fails to remedy such problem within five (5) business days of receiving such notice, or if Blueline International LLC is unable to contact and/or obtain a response from Client within fifteen (15) business days after commencing its efforts to contact Client, a material default shall be deemed to have occurred, and Blueline International LLC may at its sole discretion deem that Client terminated this Agreement, as of the date upon which Blueline International LLC first discovered the problem.

(c) Cancellation Fee. If the client halts work and applies by registered letter for a refund within 5 business days, to BlueLine International, LLC, 1029 Dublin Road, Columbus OH, 43215, phone (888) 485-0100, a $100 cancellation fee as well as work completed shall be billed at the hourly rate stated above, and deducted from the initial payment, the balance of which shall be returned to the client. If, at the time of the request for refund, $100 cancellation fee and work has been completed beyond the amount covered by the initial payment, the client shall be liable to pay for all work completed at the hourly rate of $39 plus the $100.00 cancellation fee. No portion of this initial payment will be refunded unless written application is made within 5 business days of signing this contract.

(d) Rescheduling Fee. If Client delays or elects to reschedule the commencement or performance of this project for a period of more than thirty (30) business days after the Acceptance Date, Client shall pay to Blueline International LLC a $250 "Rescheduling Fee" in addition to any other fees as outlined in this Agreement. Blueline International LLC may demand payment of such Rescheduling Fee prior to commencing or recommencing its work hereunder.

(e) Collection; Processing and Collection Fee. Accounts that are not collectible    by Blueline International LLC after 45 days may be turned over to an outside collection agency for collection. If your account is turned over for collection, Client agrees to pay Blueline International LLC a "Processing and Collection" fee of $150.00. In the event that payment should result in any third-party expenses (such as overdraft charges or banking fees, collection agency fees, postage, etc.), such expenses shall be the sole obligation of the Client.

(f) Charge-Back Fee. Client acknowledges that Blueline International LLC does a significant amount of business through credit cards and that "Charge-Backs" against credit card payments cause or have the potential to cause significant special costs including, among other things, damaged relationships with the credit card companies. In the event that Client charges back an amount paid to Blueline International LLC against a credit card, and it is determined that Blueline International LLC was entitled to such payment under this Agreement, Client accordingly agrees to pay to Blueline International LLC a "Charge-Back Fee" of $500 as liquidated damages for its additional costs. Client further and specifically agrees that all disputes concerning the propriety of a give charge-back shall be subject to the "Choice of Law and Forum" provisions of this Agreement.

(g) Blueline International LLC Entitled to Attorneys', Experts' and Other Fees. In the event of any litigation between the parties or their representatives, or by a party or its representative before a bankruptcy or similar court that has jurisdiction over another party hereto or over any of such other party's property or assets, concerning any provision(s) of this Agreement or the rights and duties of any person or entity in relation thereto, Blueline International LLC shall be entitled, in addition to any other relief, to all reasonable expenses (as determined by the Court) incurred in connection with any successful effort to enforce its rights under this Agreement or to defend against a suit brought by Client (and in any separate action brought for the purpose of recovery under this paragraph), including without limitation all court costs and all reasonable attorneys', accountants', experts', and other professional fees.

**Website Proposal for Ilis Computer, Inc.**      **Your Long Term IT Partner**

| Wire Transfer Information: | Check or Money Orders: | Credit Card Transactions: |
|---|---|---|
| Account information: BlueLine International LLC ABA Routing #: 044000037 Account #: 632776159 Bank: Bank One, Columbus, Ohio 43271 | To: BlueLine International LLC. Send to address: **1029 Dublin Road Columbus OH 43215** us, | You may put up to $2500 on credit cards. Please call us at 614-488-8094 to make payment |

The total amount of this contract is $ *18,950* USD.

This agreement begins with an initial payment of $ *6,632.50* USD. If the client halts work and applies by registered letter for a refund within 5 business days, to the founders of BlueLine International, LLC, 1029 Dublin Road, Columbus OH, 43215, phone (888) 485-0100, a $200 cancellation fee as well as work completed shall be billed at the hourly rate stated above, and deducted from the initial payment, the balance of which shall be returned to the client. If, at the time of the request for refund, $200 cancellation fee and work has been completed beyond the amount covered by the initial payment, the client shall be liable to pay for all work completed at the hourly rate of $39 plus the $200.00 cancellation fee. No portion of this initial payment will be refunded unless written application is made within 5 business days of signing this contract.

The undersigned agrees to the terms of this agreement on behalf of his or her organization or business.

**Authorized Signature Only**

Names: *BOB ILIS*

Sign: *[signature]*

Date: *June 10, 2005*

**BlueLine International LLC**
**Employer Identification #: 020667670**
**1029 Dublin Road**
**Columbus, OH 43215**
**Phone 888-485-0100 or (614) 488-8094**
**http://www.BlueLineIT.com**



856 A.2d 1066, 2004 WL 1874652 (Del.Supr.), 33 Media L. Rep. 1573
**(Cite as: 856 A.2d 1066)**

H
Chadwick v. Metro Corp.
Del.Supr.,2004.
(The decision of the Court is referenced in the
Atlantic Reporter in a 'Table of Decisions Without
Published Opinions.')
          Supreme Court of Delaware.
      H. Beatty **CHADWICK**, Plaintiff Below,
                   Appellant,
                      v.
   **METRO** CORP., a Pennsylvania corporation,
   publisher of Philadelphia Magazine, Christopher
   McDougall, and Barbara **Chadwick** aka Barbara
   Applegate, Defendants Below, Appellees.
                **No. 44, 2004.**

           Submitted July 14, 2004.
           Decided Aug. 12, 2004.

**Background:** Plaintiff brought action in Delaware
against publisher, author, and declarant for
defamation, invasion of privacy, and conspiracy to
injure his reputation. Author and declarant brought
motions to dismiss based on lack of personal
jurisdiction, and publisher brought motion to stay
based on similar action pending in Pennsylvania.
The Superior Court, New Castle County, granted
the motions, and later granted publisher's motion to
dismiss. Plaintiff appealed.

**Holdings:** The Supreme Court held that:

(1) court did not abuse discretion in dismissing
action in favor of first-filed Pennsylvania action, and

(2) trial court lacked personal jurisdiction over
declarant and author.

Affirmed.
West Headnotes
**[1] Courts 106 ☞514**

106 Courts
    106VII Concurrent and Conflicting Jurisdiction
       106VII(C) Courts of Different States or
Countries
          106k514 k. Pendency and Scope of Prior
Proceeding. Most Cited Cases
Trial court in Delaware did not abuse discretion in
dismissing defamation action in favor of first-filed
Pennsylvania defamation action, although
Pennsylvania action had been deferred until plaintiff
complied with civil contempt order; Pennsylvania
court was competent and capable, Pennsylvania
court believed plaintiff was capable of compliance
with civil contempt order, suits involved
substantially similar parties and issues, and ties to
Delaware were tenuous at best. 10 Del.C. §
3104(c)(3).

**[2] Courts 106 ☞12(2.25)**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction
in General
       106k10 Jurisdiction of the Person
          106k12 Domicile or Residence of Party
             106k12(2) Actions by or Against
Nonresidents; "Long-Arm" Jurisdiction in General
                106k12(2.25) k. Tort Cases. Most
Cited Cases
Delaware trial court lacked personal jurisdiction
over declarant and author of allegedly defamatory
article, where author was Pennsylvania resident and
declarant was Maine resident, author conducted
interview with declarant by telephone from author's
house in Pennsylvania to declarant's residence in
Maine, author wrote and edited article in
Pennsylvania, and declarant's only connection to
Delaware was occasional travel on interstate.

Court Below: Superior Court of the State of
Delaware in and for New Castle County, C.A. No.
02-11-115.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

856 A.2d 1066, 2004 WL 1874652 (Del.Supr.), 33 Media L. Rep. 1573
**(Cite as: 856 A.2d 1066)**

Before STEELE, Chief Justice, HOLLAND, and BERGER, Justices.

*ORDER*

**\*1** This 12th day of August 2004, upon consideration of the briefs and oral argument of the parties, it appears to the Court as follows:

(1) H. Beatty Chadwick appeals the dismissal with prejudice of his complaint for defamation, invasion of privacy, and conspiracy to injure his reputation against publisher Metro Corp., author Christopher McDougall, and Chadwick's ex-wife, Barbara Chadwick a/k/a Barbara Applegate.

(2) In 1992, Barbara Applegate filed for divorce in the Pennsylvania Court of Common Pleas. During the divorce proceedings, Chadwick represented to the court that he had transferred $2,502,000 of the couple's marital assets to an overseas account to satisfy a debt. The trial judge did not accept his explanation and eventually ordered Chadwick, *inter alia,* to return the entire sum to a court administered account. Chadwick refused to comply with the July 22, 1994 order. The trial judge found him in civil contempt.

(3) In September 1994, Chadwick fled to Delaware to evade capture and incarceration. He was arrested in Philadelphia in April 1995, and remains incarcerated in Pennsylvania pursuant to the civil contempt order. Chadwick has repeatedly challenged the contempt order and sought release from jail. The resulting decisions consistently upheld the finding of contempt and have repeatedly reminded Chadwick of the fact that he remains incarcerated by his own will and actions.<sup>FN1</sup> In short, Chadwick "holds the keys to the jailhouse" because the Pennsylvania Court has concluded that he is able to comply with the civil contempt order, but refuses to do so.

> FN1. *See, e.g., Chadwick v. Janecka,* 2002 WL 12292 at *7 n. 2, *Chadwick v. Janecka,* 312 F.3d 597, 613 (3d Cir.2002), *cert. denied,* 538 U.S. 1000, 123 S.Ct. 1914, 155 L.Ed.2d 828 (2003).

(4) Metro published a series of articles in *Philadelphia Magazine* detailing the circumstances surrounding Chadwick's divorce and incarceration. The first article, published in February 1995, included allegations by Applegate that Chadwick physically and mentally abused her during their marriage. In June 1995, Metro published a follow-up article describing the details of Chadwick's arrest at a Philadelphia dental office. Metro published a third article in January 1996. Later that year, Chadwick sued Metro and Lisa DePaulo, the author of the articles, for defamation in a Pennsylvania court. The Pennsylvania court has since deferred the suit until Chadwick complies with the July 1994 civil contempt order.

(5) In December 2001, *Philadelphia Magazine* published an article updating the status of Chadwick's divorce and incarceration that contained many of the factual statements included in the earlier articles. In November 2002, Chadwick sued publisher Metro, author Christopher McDougall, and ex-wife Barbara Applegate for, *inter alia,* defamation in the Delaware Superior Court.

(6) In February 2003, the trial judge granted motions to dismiss the claims against McDougall and Applegate for lack of personal jurisdiction. Metro moved to stay the Delaware suit pending resolution of Chadwick's substantially similar, first-filed Pennsylvania suit. The trial judge stayed the suit against Metro in February 2003, and ordered a report on the status of the Pennsylvania motion in six months. Chadwick immediately filed a motion for reconsideration and a motion for entry of a final judgment or, in the alternative, for certification of interlocutory appeal. The trial judge denied both motions and this Court denied Chadwick's motion for an interlocutory appeal. On October 16, 2003, Metro filed a motion to dismiss and following argument in January 2004, the trial judge dismissed the complaint. Chadwick appeals the January 23, 2004 order dismissing Metro, and the February 24, 2003 orders dismissing Applegate and McDougall for lack of personal jurisdiction.

**\*2** (7) After careful review, we are satisfied that the trial judge acted appropriately within his discretion by dismissing Chadwick's Delaware complaint in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

856 A.2d 1066, 2004 WL 1874652 (Del.Supr.), 33 Media L. Rep. 1573
**(Cite as: 856 A.2d 1066)**

favor of the first-filed Pennsylvania suit. The *McWane* doctrine permits a Delaware judge *to dismiss or stay* an action in favor of a first-filed action pending in another jurisdiction.[FN2] Our courts generally do not consider a motion to dismiss under traditional *forum non conveniens* analysis when a similar action is pending elsewhere.[FN3] Rather, we apply the *McWane* factors to determine whether the later-filed action should be *stayed or dismissed.* Under *McWane* and its progeny, a judge, in the exercise of his or her discretion, may stay or dismiss a later-filed suit where a first-filed suit is pending in a court capable of administering prompt and complete justice, and involves substantially similar parties and issues.[FN4]

> FN2. *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.,* 263 A.2d 281, 283 (Del.1970).

> FN3. *Id.* at 284 ("We reaffirm ... the application of the established rules of *forum non conveniens* where (1) no other action is pending elsewhere between the same parties involving the same issues, or (2) such other pending action was filed subsequently to the Delaware action.").

> FN4. *Id.* at 283; *Dura Pharms., Inc., v. Scandipharm, Inc.,* 713 A.2d 925, 930 (Del.Ch.1998).

(8) In the matter *sub judice,* the first-filed Pennsylvania suit is pending in a competent, capable court although it has been stayed until Chadwick complies with the civil contempt order. We recognize that the Pennsylvania courts believe that Chadwick is fully capable of compliance. Chadwick, while arguing otherwise, nonetheless has chosen not to do so.

(9) Further, it is clear that the Pennsylvania and Delaware suits involve substantially similar parties and issues. In Delaware, under the *McWane* doctrine, a duplicative action that is substantially or functionally identical to an earlier suit may be dismissed or stayed.[FN5] In both the Pennsylvania and Delaware actions, Chadwick alleges injury to

his reputation, resulting from statements by Applegate published in Metro's *Philadelphia Magazine.* Chadwick insists that the two actions are dissimilar because different people authored the 2001 article and the three earlier articles. The 2001 article, however, merely constituted an update on the earlier articles regarding Chadwick's incarceration. The 2001 article contained virtually all of the allegedly defamatory statements previously published in the 1995 and 1996 articles. Further, it is clear that the articles arise out of a "common nucleus of operative facts," [FN6] involving Applegate's claims of physical and emotional abuse and Chadwick's non-compliance with the civil contempt order of the Pennsylvania court. Both the Pennsylvania and Delaware suits allege that the Applegate statements are defamatory. Accordingly, Chadwick's functionally identical claims may be fully adjudicated by Pennsylvania when Chadwick complies with the civil contempt order.

> FN5. *See, e.g., Dura Pharms.,* 713 A.2d at 930 ("Thus, there is certainly a close enough identity of issues ... to implicate the *McWane* comity analysis."); *AT & T Corp. v. Prime Sec. Distribs., Inc.,* 1996 WL 633300 at *2 (Del.Ch. Oct.24, 1996) ( "To grant a stay, it is not required that the parties and issues in both actions be identical. Substantial or functional identity is sufficient."); *Schnell v. Porta Sys. Corp.,* 1994 WL 148276 at *4 (Del.Ch. Apr.12, 1994) (stating that "all claims arising from a common nucleus of operative facts [should] be brought at the same time whenever possible").

> FN6. *Dura Pharms.,* 713 A.2d at 930.

(10) We find the trial judge's decision to dismiss rather than extend the stay for an additional, potentially lengthy time, appropriately supported by the ends of judicial efficiency.[FN7] No party to this action is a Delaware citizen. In fact, it appears that even the collective ties of all parties to Delaware are tenuous at best. Chadwick's choice of Delaware as a forum for this lawsuit seems predicated on the fact that a Pennsylvania court will not allow him to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

856 A.2d 1066                                                                                    Page 4

856 A.2d 1066, 2004 WL 1874652 (Del.Supr.), 33 Media L. Rep. 1573
**(Cite as: 856 A.2d 1066)**

proceed, for reasons previously stated, with a functionally identical suit. For Delaware to allow Chadwick to proceed in our courts under these particular circumstances would be, in effect, to subvert the civil contempt order pending in Pennsylvania.

> FN7. *McWane,* 263 A.2d at 283 ("Judicial efficiency encourages confining litigation to the forum where the parties first commence the action when a prior, pending action in another jurisdiction involves the same parties and issues."); *E.I. du Pont de Nemours & Co. v. Cigna Prop. & Casualty Co.,* Del. Ch., C.A. No. 12386, Allen, C. (Jul. 17, 1992)

**\*3** [1] (11) From the outset, the trial judge expressed concern over presiding over this, a potentially "lifelong case." The trial judge made it clear to the parties' that he was "concerned about how quickly things are done." Later, he expressed some uncertainty about how this matter would proceed, stating, "having cases that are lasting for years is not a good thing for a judge, how do I deal with that?" In deference to the potential merits of the suit, the trial judge granted a stay and ordered the parties to report on the status of the matter after six-months. *Eleven months later,* the trial judge granted Metro's motion to dismiss, explaining:
It's difficult for the-for our system-it's difficult for me to envision a situation where the resources of this Court and the money that-of this state should be utilized to benefit someone whose only connection to the state is a fugitive status.[FN8]

> FN8. Trial Transcript on Motion to Dismiss (January 20, 2004) at pg. 11.

We have stayed the matter for a period of time hoping that-that Mr. Chadwick would comply with those orders and allow that case to proceed. It hasn't. It appears that Mr. Chadwick is satisfied to live the remaining years if his life incarcerated. And it would be unfair to the Defendant to allow the action to be stayed forever, waiting for Mr.

Chadwick's-either to come to his senses or die.[FN9]

> FN9. *Id.* at pp. 19-20.

We are convinced that the trial judge acted appropriately within his inherent authority to manage his own trial docket, and consistently with the reasonable expectations of the litigants when he dismissed Chadwick's suit. At some point, it became clear to the trial judge that the later-filed Delaware suit was likely an end run by Chadwick. Our trial courts should rightfully deny sanctuary to the purpose evident at the heart of Chadwick's suit: to subvert the effect of a lawful Pennsylvania civil contempt order. Our Delaware trial judges are renown for their temperament and prudence; our trial courts for their efficiency and fairness of procedure. The trial judge here acted patiently and ultimately decisively when he stayed and then dismissed the complaint against Metro. His actions reflect reasonable exercise of judicial discretion.

[2] (12) Chadwick also appeals the dismissal of his complaints against McDougall and Applegate. We review *de novo* a trial judge's decision to dismiss a defendant for lack of personal jurisdiction.[FN10] Delaware courts apply a two-step analysis to determine whether the court has *in personam* jurisdiction over a non-resident defendant. The court must first consider whether the long-arm statute applies, and then evaluate whether exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Chadwick alleges that McDougall and Applegate are subject to personal jurisdiction under 10 *Del. C.* § 3104(c)(3), the section of the long-arm statute that grants jurisdiction if a defendant "causes tortious injury in the State by an act or omission in this State." [FN11] We find that neither McDougall nor Applegate committed a tortious act or omission in Delaware. McDougall is a Pennsylvania resident with virtually no contacts to Delaware. He conducted his interview with Applegate over the telephone from his house in Pennsylvania to Applegate's residence in Maine. McDougall wrote and edited the article in Pennsylvania. Applegate is a resident of Maine and has never lived in Delaware. Her contact to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

856 A.2d 1066                                                                                    Page 5

856 A.2d 1066, 2004 WL 1874652 (Del.Supr.), 33 Media L. Rep. 1573
**(Cite as: 856 A.2d 1066)**

Delaware has generally been limited to her travels on I-95. Based on these facts, the trial judge properly dismissed McDougall and Applegate from the litigation because Delaware lacked personal jurisdiction over them.

> FN10. *Hercules, Inc. v. Leu Trust & Banking, Ltd.,* 611 A.2d 476, 481 (Del.1992), *cert. dismissed,* 507 U.S. 1025, 113 S.Ct. 1836, 123 L.Ed.2d 463 (1993).

> FN11. 10 *Del. C.* § 3104(c)(3) (2004).

**\*4** Accordingly, we AFFIRM the Superior Court's judgments that dismissed the complaints against Metro, McDougall, and Applegate.

Del.Supr.,2004.
Chadwick v. Metro Corp.
856 A.2d 1066, 2004 WL 1874652 (Del.Supr.), 33 Media L. Rep. 1573

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                      Page 1

Not Reported in F.Supp.2d, 2002 WL 100602 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

Franceskino v. Womack
D.Conn.,2002.
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.
Thomas H. FRANCESKINO, Jr. Plaintiff,
v.
Michael O. WOMACK and Womack Material
Handling Sys., Inc., Defendants
**No. CIV.3:01CV1835 (AVC).**

Jan. 25, 2002.

RULING ON THE DEFENDANT WOMACK'S
MOTION TO DISMISS

COVELLO, Chief District J.

**\*1** This is an action for damages alleging breach of a contract of employment. The defendant, Michael O. Womack, moves pursuant to Fed.R.Civ.P. 12(b)(2) to dismiss the action for want of personal jurisdiction. He argues that since he a resident of Florida and the complaint seeks damages against him for actions allegedly taken by him in his capacity as an employee and officer of a corporation, he is beyond the reach of Connecticut's long arm statute. Moreover, Womack asserts that requiring him to litigate in Connecticut would offend the due process clause of the Fourteenth Amendment to the United States Constitution.

The issues presented are: (1) whether the Connecticut long arm statute, Conn. Gen.Stat. § 52-59b, authorizes the exercise of jurisdiction over Womack; and (2) whether requiring Womack to litigate in Connecticut comports with the due process clause of the Fourteenth Amendment to the United States Constitution.

For the reasons hereinafter set forth, the court concludes that Womack is within the reach of the Connecticut long arm statute, and that requiring Womack to litigate in Connecticut would not offend the due process clause of the Fourteenth

Amendment. Accordingly, the motion to dismiss is DENIED.

FACTS

Examination of the complaint, pleadings, and affidavit accompanying the motion to dismiss, and the responses thereto, disclose the following undisputed, material facts. In July of 1978, the defendant, Michael O. Womack, founded a distribution company known as Womack Material Handling Systems, Inc. (WMHSI), in Wallingford, Connecticut. On October 20, 1980, Womack hired the plaintiff, Thomas H. Franceskino, to work in an undisclosed capacity and, in 1982 promoted him to the position of operations manager. In this capacity, the plaintiff alleges that, under the direction of Womack, he handled a variety of issues, including customer relations, company hiring, training, and the supervision of service technicians.

During February of 1985, Womack promoted the plaintiff to the position of Vice President and allegedly promised to give him a 10% equity position in WMHSI in consideration for his expanding role, his non-compensated efforts over the previous three years, and his continued and expanding commitment to WMHSI. (*See* Franceskino Aff. at ¶ 9). The complaint alleges that, in this regard, Womack promised the plaintiff, *inter alia,* that when he was ready to leave or retire, or when Womack sold WMHSI, Womack would assess a 10% value of WMHSI at a year end 1985 value and then subtract that figure from the 10% value of WMHSI at the time of his departure. Womack would then pay the difference to the plaintiff as his equity position. (Franceskino Aff. at ¶ 9, compl. at ¶ 12).

In 1994, Womack moved to Florida but continued to conduct business in Connecticut. On or about February 11, 1996, the plaintiff met with Womack at Womack's condominium in Quarry Village in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2

Not Reported in F.Supp.2d, 2002 WL 100602 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

Cheshire, Connecticut. (Franceskino Aff. at ¶ 10). There, Womack allegedly told the plaintiff that he planned to sell WMHSI and that he would not be honoring the previously promised 10% equity position. On February 18, 1996, the plaintiff resigned from WMHSI and did not receive the allegedly promised equity. (Franceskino Aff. at ¶¶ 14,15). On September 12, 2001, the plaintiff filed the present action, seeking damages based on common law precepts concerning breach of contract, promissory estoppel and unjust enrichment.

**\*2** The plaintiff asserts, and the defendants do not dispute, that from 1978 to 1994, Womack owned 100% of WMHSI's stock, and that from 1994 to 2000, Womack owned 70% of WMHSI's stock. (Franceskino Aff. at ¶ 17). The plaintiff further asserts, and the defendants do not dispute, that Womack no longer owns WMHSI but continues to own the real property upon which WMHSI sits (Franceskino Aff. at ¶ 8), collects revenue as the lessor of that property (Opposition Memo. at 6) and, in addition, owns another business in Connecticut known as Precision Devices, Inc.

STANDARD

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of showing that the court has jurisdiction over a defendant. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.1996). Where, as here, a defendant moves to dismiss for lack of personal jurisdiction prior to discovery, a plaintiff may defeat the motion with legally sufficient allegations of jurisdiction. *Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.1990). At that stage, the plaintiff's proof is satisfied by a prima facie showing. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Once discovery commences, the plaintiff's burden is more stringent and he must submit an averment of facts that, if credited by the trier of fact, would suffice to establish jurisdiction over the defendant. *Ball,* 902 F.2d at 197.

DISCUSSION

Connecticut utilizes a familiar two-step analysis to determine if a court has personal jurisdiction over a party brought before it. *Savage v. Scripto-Tokai Corp.,* 147 F.Supp.2d 86, 90 (D.Conn.2001). The court must first inquire whether, under the facts of the case, the state's long arm statute may be asserted as a basis for jurisdiction over the defendant. *Frazer v. McGowan,* 198 Conn. 243, 246, 502 A.2d 905 (1986). Once jurisdiction has been attached under the long-arm statute, the court must then determine whether the exercise of jurisdiction satisfies the federal constitutional requirement of due process. *Bensmiller v. E.I. Dupont de Nemours & Co.,* 47 F.3d 79, 81 (2d Cir.1995).

1. *Connecticut Long Arm Jurisdiction*

Womack first asserts that the plaintiff has failed to establish personal jurisdiction over him under the Connecticut long arm statute because he is not a resident of Connecticut and the conduct alleged concerns actions he took in his capacity as an employee and officer of a corporate defendant. In response, the plaintiff maintains that long arm jurisdiction is indeed authorized, as Womack transacted business within the state, committed tortious conduct in Connecticut and, in addition, owns real property within the state. Further, the plaintiff argues that, contrary to Womack's assertion, the corporate defendant is incapable of shielding Womack from the reach of this court's jurisdiction.

Having considered the arguments and evidence presented, the court concludes that the plaintiff has succeeded in presenting one legally sufficient allegation of long arm jurisdiction. The Connecticut long arm statute, Conn. Gen.Stat. § 52-59b(a) provides, in relevant part:
**\*3** As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual... who in person or through an agent: (1) Transacts any business within the state; or (2) commits a tortious act within the state... or (4) owns, uses or possesses any real property situated within the state.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 100602 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

*Id.* Under the fiduciary shield doctrine, however, "[i]f an individual has contact with a particular state only by virtue of his acts as a fiduciary of [a] corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct." *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d Cir.1981). The underpinning of this doctrine "is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Id.* Consequently, "[i]f the corporation is merely a shell, it is equitable... to subject its owner personally to the court's jurisdiction to defend the acts he has done on behalf of his shell." *Id.* at 902. In determining whether a cause of action arises from any of the acts enumerated in § 52-59b, Connecticut courts look to both Connecticut case law and New York case law. *Zatolas v. Nisenfeld,* 184 Conn. 471, 474, 440 A.2d 179, 181 (1981).

### A. *Transacting Business*

In order for a plaintiff to show that a defendant transacts business within this state sufficient to serve as a predicate for long arm jurisdiction, the plaintiff must establish that the defendant transacted business within the state at the time the plaintiff commenced the action. *Russell v. Quinn,* No. 96civ8026, 1997 WL 124121 (S.D.N.Y. March 19, 1997) (*quoting Lancaster v. Colonia Motor Freight Line,* 177 A.D.2d 152, 581 N.Y.S.2d 283, 287 (1st Dep't 1992). Further, the plaintiff must demonstrate a substantial relationship between the business transacted by the defendant in the state and the plaintiff's cause of action. *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 763 (2d Cir.1983); *see also Lancaster,* 581 N.Y.S.2d at 287.

The record reflects that, at the time the plaintiff commenced the action on September 12, 2001, Womack resided in Florida, no longer owned WMHS but continued to conduct business in Connecticut. The record does no reflect the specific type of business Womack transacted and hence, the court is unable to determine whether any relationship exists between Womack's business in

Connecticut and the plaintiff's breach of contract claim. Consequently, the plaintiff has failed to show that Womack transacted business within Connecticut sufficient to authorize long arm jurisdiction.

### B. *Tortious Conduct*

The plaintiff next argues that long arm jurisdiction is authorized under Conn. Gen.Stat. § 52-59b (a)(2) for tortious acts committed in the state, on grounds that, the gravamen of his breach of contract claim is Womack's tortious act in Connecticut of "misrepresenting his intentions to compensate [the] plaintiff for his services... and denying that an oral agreement existed." (Opposition Memo. at 5). While the argument is an interesting one, the complaint simply fails to state any cause of action grounded in tort and, instead, is composed of claims arising in contract and quasi-contract. Consequently, long arm jurisdiction is not authorized under § 52-59b (a)(2). *See e.g., Brown v. Atlantic Casualty Ins. Co.,* No. CV98-0415999S, 1998 WL 811368, *2 (Conn.Super.Ct. Nov. 13, 1998) (plaintiff can not invoke long arm jurisdiction for tortious conduct where complaint alleges only breach of contract and statutory claims).

### C. *Real Property*

**\*4** The plaintiff next argues that long arm jurisdiction is authorized over Womack under § 52-59b (a)(4) on the ground that Womack uses or possesses real property situated in the state. The court agrees.

Conn. Gen.Stat. § 52-59b (a)(4) authorizes long arm jurisdiction over a non-resident individual who owns, uses or possesses any real property situated within the state. *Id.* "Like transacting business, ... use or possession of real property as a basis for in personam jurisdiction requires that the real property interests involved be related to the subject matter of the litigation." *Chemical Bank v. Schlesinger,* No. CV920122878S, 1993 WL 540159, *2 (Conn.Super.Ct. Dec. 21, 1993). The real property need not be the subject of the lawsuit, but the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 100602 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

plaintiff must show that "a substantial connection exists between the basis of the cause of action and the ownership of the property." *Id.* at *3 (*quoting Darmath v. Reintz,* 485 So.2d 881, 883 (Fla.1986)).

The gravamen of this action is that Womack breached a contract of employment with the plaintiff, in that he breached a promise to pay the plaintiff 10% of his business, a business in which the Connecticut property is part and parcel. Hence, there is a substantial relationship between Womack's real property in Connecticut and the basis for this lawsuit. Further, Womack may not avail himself of the fiduciary shield doctrine because the predicate for jurisdiction here is his ownership of real property in Connecticut, not some action he took in Connecticut on behalf of a corporate employer. Accordingly, Womack is subject to the court's jurisdiction under Conn. Gen.Stat. § 52-59b (a)(4).

### 2. *Due Process and the Fourteenth Amendment*

Womack also asserts that the court is without personal jurisdiction over him because requiring him to litigate in Connecticut would violate the due process clause of the Fourteenth Amendment to the United States Constitution. He does not, however, submit any argument on this issue and, in any event, the court concludes that any argument would be without merit.

In determining whether the exercise of personal jurisdiction in a particular case violates due process, the Supreme Court has provided broad guidance which centers on a court's inquiry into whether the assertion of jurisdiction comports with "traditional notions of fair play and substantial justice." *Nielsen v. Sioux Tools, Inc.,* 870 F.Supp. 435, 438 (D.Conn.1994) (*citing International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945)). "The focus for application of this broad standard has been consideration of whether there are 'minimum contacts' between the defendant and the forum state." *Neilsen,* 870 F.Supp. at 438. There is no requirement that such contacts be continuing at the time the suit is filed, *id.,* and are sufficient where a plaintiff simply shows "some act by which

the defendant purposely avails [him]self of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the laws." *Neilsen,* 870 F.Supp. at 438 (*quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228 (1958)). "In addition to the minimum contacts analysis, the reasonableness of the exercise of jurisdiction in each case will depend upon an evaluation of the interests of the forum state and the plaintiff's interest in obtaining relief." *Id.* (*citing World-Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 313, 100 S.Ct. 559, 568 (1980)).

**\*5** The court is of the opinion that the assertion of jurisdiction over Womack is entirely reasonable and would not offend traditional notions of fair play and substantial justice. There is no question that Womack purposely availed himself of the privilege of conducting activities within Connecticut-he has lived here, continues to own real property and at least one business here, and he has prospered here. He also engaged the plaintiff in a contract of employment in this state, a contract that is now the subject of this litigation. Although Womack now resides in Florida, that is of little significance. Womack could "reasonably anticipate being haled into court [in Connecticut]" to answer for any injury caused by his breach of that employment contract. See *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Furthermore, the plaintiff has a strong interest in obtaining relief in the state in which he resides, and the state of Connecticut clearly has an interest in providing a forum for any citizen aggrieved by a breach of contract. Accordingly, Womack's due process rights are not offended by the assertion of the court's jurisdiction.

### CONCLUSION

For the foregoing reasons, Womack's motion to dismiss the complaint for want of personal jurisdiction (document no. 15) is DENIED.

D.Conn.,2002.
Franceskino v. Womack
Not Reported in F.Supp.2d, 2002 WL 100602 (D.Conn.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 5

Not Reported in F.Supp.2d, 2002 WL 100602 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**


END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in A.2d                                                                        Page 1

Not Reported in A.2d, 1984 WL 8255 (Del.Ch.), 10 Del. J. Corp. L. 215
**(Cite as: Not Reported in A.2d)**

C

J. ROYAL PARKER ASSOCIATES, INC. v.
PARCO BROWN & ROOT, INC.
Del.Ch. 1984

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Court of Chancery of Delaware, New Castle County.
J. ROYAL PARKER ASSOCIATES, INC.
v.
PARCO BROWN & ROOT, INC.
**No. 7013**

November 30, 1984

Plaintiff, J. Royal Parker Associates, Inc., brought an action on its own behalf, and derivatively on behalf of Parco Brown & Root, Inc. alleging breach of fiduciary duty and breaches of contract in connection with the creation and management of Parco. Defendant moved to dismiss.

The court of chancery, per Vice-Chancellor Berger, held: (1) that Brown & Root had not conducted regular business, derived substantial revenues, nor maintained sufficient contacts in the state to satisfy the requirements of Delaware's long-arm statute; (2) that an additional defendant was not a joint adventurer in the Parco enterprise, and had not committed any act which would justify disregarding the separate corporate entities; and (3) that all parties in the present action would be substantially prejudiced by a judgment rendered in the absence of Brown & Root. Accordingly, defendants' motions to dismiss were granted.

**[1] Courts 106 ⚷12(2)**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
        106k10 Jurisdiction of the Person
            106k12 Domicile or Residence of Party
                106k12(2) k. Actions by or Against

Nonresidents; "Long-Arm" Jurisdiction in General.
Most Cited Cases
Under the Delaware long-arm statute, a nonresident defendant who transacts business or contracts to supply services within the forum is amenable to personal jurisdiction but will only be held to such jurisdiction if the cause of action which produces liability arises from the substantial contact established. DEL. CODE ANN. tit. 10, § 3104(c)(1), (c)(2) (1974).

**[2] Courts 106 ⚷12(2)**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
        106k10 Jurisdiction of the Person
            106k12 Domicile or Residence of Party
                106k12(2) k. Actions by or Against
Nonresidents; "Long-Arm" Jurisdiction in General.
Most Cited Cases
Incorporation in Delaware does not satisfy the ' transacts any business' standard of the Delaware long-arm statute and, therefore, does not subject a nonresident defendant to personal jurisdiction where the act of incorporation is merely an incident to the negotiation and execution of an agreement outside of the state of Delaware. DEL. CODE ANN. tit. 10, § 3104(c)(1) (1974).

**[3] Courts 106 ⚷12(2)**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
        106k10 Jurisdiction of the Person
            106k12 Domicile or Residence of Party
                106k12(2) k. Actions by or Against
Nonresidents; "Long-Arm" Jurisdiction in General.
Most Cited Cases
An agreement to provide for the formation of a holding company in Delaware is not a contract to supply services or things in that state and does not bring the transaction within the purview of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                    Page 2

Not Reported in A.2d, 1984 WL 8255 (Del.Ch.), 10 Del. J. Corp. L. 215
**(Cite as: Not Reported in A.2d)**

Delaware long-arm statute where the operating companies are out of state and the only contact established by the agreement is the prospect of providing services in Delaware. DEL. CODE ANN. tit. 10, § 3104(c)(2) (1974).

**[4] Courts 106 €⇒12(2)**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
        106k10 Jurisdiction of the Person
            106k12 Domicile or Residence of Party
                106k12(2) k. Actions by or Against Nonresidents; "Long-Arm" Jurisdiction in General. Most Cited Cases
Although, pursuant to long-arm statute, a nonresident defendant who regularly does or solicits business in Delaware may be amenable to personal jurisdiction, a continuous course of activity is not established by defendant's infrequent advertising in Delaware, sporadic travel into the forum, and retention of local counsel for the purpose of terminating business activities. DEL. CODE ANN. tit. 10 § 3104(c)(4) (1974).

**[5] Courts 106 €⇒12(2)**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
        106k10 Jurisdiction of the Person
            106k12 Domicile or Residence of Party
                106k12(2) k. Actions by or Against Nonresidents; "Long-Arm" Jurisdiction in General. Most Cited Cases
Although receipt of substantial revenues by a nonresident defendant for services rendered provides a basis for personal jurisdiction under Delaware's long-arm statute, such revenues, to come within the statute, must result from a persistent course of activity, must be generated from more than one transaction in the state, and must be received before complaint on the activity is filed. DEL. CODE ANN. tit. 10, § 3104(c)(4) (1974).

**[6] Corporations 101 €⇒665(1)**

101 Corporations

101XVI Foreign Corporations
    101k663 Actions by or Against
        101k665 Jurisdiction
            101k665(1) k. Facts and Circumstances Conferring Jurisdiction. Most Cited Cases
Where a nonresident's limited business contacts with the forum do not provide an assertion of personal jurisdiction over him pursuant to long-arm statute, it follows that jurisdiction cannot be sustained under the more restrictive corporate long-arm statute. DEL. CODE ANN. tit. 10, § 3104(c)(4) (1974); tit. 8, § 382 (1974).

**[7] Pleading 302 €⇒354(12)**

302 Pleading

**Pretrial Procedure 307A €⇒624**

307A Pretrial Procedure
    307AIII Dismissal
        307AIII(B) Involuntary Dismissal
            307AIII(B)4 Pleading, Defects In, in General
                307Ak623 Clear and Certain Nature of Insufficiency
                307Ak624 k. Availability of Relief Under Any State of Facts Provable. Most Cited Cases

**Pretrial Procedure 307A €⇒683**

307A Pretrial Procedure
    307AIII Dismissal
        307AIII(B) Involuntary Dismissal
            307AIII(B)6 Proceedings and Effect
                307Ak682 Evidence
                307Ak683 k. Presumptions and Burden of Proof. Most Cited Cases
A court should not dismiss a complaint for failure to state a claim unless it appears to a reasonable certainty that under no stated facts which could be proved to support the claim asserted would plaintiff be entitled to relief, and mere vagueness or a lack of detail are not alone sufficient grounds to dismiss a complaint for failure to state a claim.

A court should not dismiss a complaint for failure to state a claim unless it appears to a reasonable

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1984 WL 8255 (Del.Ch.), 10 Del. J. Corp. L. 215
**(Cite as: Not Reported in A.2d)**

certainty that under no stated facts which could be proved to support the claim asserted would plaintiff be entitled to relief, and mere vagueness or a lack of detail are not alone sufficient grounds to dismiss a complaint for failure to state a claim.

**[8] Pretrial Procedure 307A ⊶687**

307A Pretrial Procedure
    307AIII Dismissal
        307AIII(B) Involuntary Dismissal
            307AIII(B)6 Proceedings and Effect
                307Ak686 Matters Deemed Admitted
                    307Ak687 k. Well-Pleaded Facts.
Most Cited Cases
In a motion to dismiss for failure to state a claim upon which relief can be granted, all well pleaded factual allegations are accepted as true but legal conclusions and unsupported factual contentions are not deemed admitted.

**[9] Corporations 101 ⊶1.5(3)**

101 Corporations
    101I Incorporation and Organization
        101k1.5 Separate Corporations, Disregarding Separate Entities
            101k1.5(3) k. Parent and Subsidiary Corporations. Most Cited Cases
A parent company is not liable for breaches of fiduciary duty by its subsidiary without piercing the corporate veil.

**[10] Joint Adventures 224 ⊶4(1)**

224 Joint Adventures
    224k3 Mutual Rights, Duties, and Liabilities of Parties
        224k4 In General
            224k4(1) k. In General. Most Cited Cases
Relationship of joint venturers is fiduciary in character and imposes upon all participants the utmost good faith, fairness, and honesty in dealing with each other with respect to the enterprise.

**[11] Joint Adventures 224 ⊶1.2**

224 Joint Adventures
    224k1.2 k. Essential Elements. Most Cited Cases

'Joint Venture' is an enterprise undertaken by several persons jointly to carry out a single business not amounting to a partnership, for their mutual benefit, in which they combine their property, money, effects, skill, and knowledge.

**[12] Pleading 302 ⊶354(12)**

302 Pleading
In a motion to dismiss for failure to join an indispensable party, the court must decide whether the absent party has a substantial interest in the subject of the litigation and whether it would be unconscionable to require the joined defendants to defend the action despite such absence.

**[13] Pleading 302 ⊶354(12)**

302 Pleading
Whenever joinder of an absent party is not feasible, the court must consider: (1) the extent to which a judgment in the present action would be prejudicial to all persons considered, (2) the extent to which any such prejudice can be avoided, (3) whether the judgment rendered in the party's absence would be adequate, and (4) whether the plaintiff will have an adequate remedy if the action is dismissed. DEL. CH. CT. R. 19(b) (1974).

**\*\*218** John H. Small, Esquire, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Delaware, for plaintiffs.
Michael D. Goldman, Esquire, of Potter, Anderson & Corroon, Wilmington, Delaware, for defendants.
BERGER, *Vice-Chancellor*
**\*1** Plaintiff, J. Royal Parker Associates, Inc. ('Parker') brought this action individually and derivatively on behalf of Parco Brown & Root, Inc. ('Parco') alleging breach of fiduciary duty and breaches of contract in connection with the formation and management of Parco. The other defendants named in this action are Brown & Root, Inc. ('Brown & Root'), a Texas corporation, Halliburton Company ('Halliburton'), a Delaware corporation and three of the six directors of Parco-James C. Norris ('Norris'), Wylie Bernard Pieper ('Pieper') and Harry M. Jacobson ('Jacobson'). This is the decision on defendants'

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1984 WL 8255 (Del.Ch.), 10 Del. J. Corp. L. 215
**(Cite as: Not Reported in A.2d)**

various motions to dismiss and/or quash service of process.

The amended complaint alleges that in the summer of 1980 Parker and Brown & Root began negotiations about the possible formation of an engineering venture in the Delaware Valley area. Parker had a following of experienced managers, engineers, designers and support personnel familiar with specialized heavy industry operations in this part of the country. Brown & Root and Halliburton, its parent company, were involved in national and international engineering and construction operations but lacked a base of operations in this area. The **219 negotiations culminated in a Preincorporation Agreement dated February 5, 1981 (the 'Agreement') whereby Parco was organized as a holding company for two New Jersey corporations that were to provide consulting and engineering services to the synthetic fuels, petroleum and chemical manufacturing industries. The Agreement provided that Parker and Brown & Root each would be issued one-half of the authorized stock of Parco and would pay an equal amount in consideration for those shares. Halliburton was a party to the Agreement. However, the only substantive provisions in the Agreement relating to Halliburton deal with the transfer and repurchase of Parco stock and an option to acquire certain Parco stock under specified circumstances.

Plaintiff alleges that defendants failed to assign work to Parco, took corporate opportunities and key personnel from Parco and generally prevented Parco from becoming a viable operation. It also claims that defendants are now wrongfully seeking to dissolve Parco without any reimbursement for the injury caused by the alleged wrongs.

## I.

Brown & Root contends that it is not subject to personal jurisdiction in this Court. Brown & Root is a Texas corporation with its principal place of business in Houston, Texas. It is not registered to do business in Delaware and has never maintained an office, mailing address, telephone listing or bank account in this State. The amended complaint

alleges that Brown & Root regularly does and solicits business in Delaware, derives substantial revenue here and, pursuant to the Agreement, contracted to provide services or things in Delaware.

The jurisdictional discovery taken in connection with the pending motion establishes that in 1983, after this action was filed, Brown & Root entered into a contract with the Delaware Department of Transportation ('Del. DOT') pursuant to which Brown & Root received approximately $34,000 as of August 1, 1983 for work performed in Delaware. Brown & Root employees made two presentations in Delaware before the Del. DOT contract was awarded. In addition, since 1976, Brown & Root personnel came to Delaware on at least three occasions to solicit or discuss with Delaware based companies business to be performed outside of Delaware. Brown & Root acknowledges that it has derived substantial revenues from projects performed for Delaware based companies outside of the State. The only other contact with Delaware is the retention of Delaware counsel late in 1982 to dissolve Parco.

*2 **220 Plaintiff contends that these contacts with Delaware are sufficient to support personal jurisdiction over Brown & Root under 10 *Del. C.* § 3104 or 8 *Del. C.* § 382. Delaware's long-arm statute, 10 *Del. C.* § 3104, provides in relevant part:
(c) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-resident, or his personal representative, who in person or through an agent:
(1) transacts any business or performs any character of work or service in the State;
(2) contracts to supply services or things in this State;

(4) causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;. . . .

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 5

Not Reported in A.2d, 1984 WL 8255 (Del.Ch.), 10 Del. J. Corp. L. 215
**(Cite as: Not Reported in A.2d)**

[1] In its brief, plaintiff relies on the Del. DOT contract as providing the basis for jurisdiction under § 3104(c)(1) or (2). However, the cases relied upon by plaintiff confirm that, as stated in the statute, the cause of action must arise from the act performed in Delaware to support jurisdiction. *See Transportes Aereos de Angola v. Ronair, Inc.*, 544 F. Supp. 858 (D. Del., 1982); *Moore v. Little Giant Industries, Inc.*, 513 F. Supp. 1043 (D. Del., 1981); *Jet Traders Investment Corp. v. Teckair, Ltd.*, 89 F.R.D. 560 (D. Del., 1981); *Wilmington Supply Co. v. Worth Plumbing & Heating, Inc.*, 505 F. Supp. 777 (D. Del., 1980). Inasmuch as the claims asserted by plaintiff do not arise from the Del. DOT contract, that contract provides no basis for jurisdiction under these subsections. At oral argument plaintiff took a different tack and argued that the incorporation of Parco in Delaware and the Agreement satisfy § 3104(c)(1) and (2) respectively and that the cause of action clearly arises from those two events.

[2][3]   Even   construing   subsection   (c)(1) expansively, the act of incorporating Parco in Delaware does not constitute the transaction of business by Brown & Root. The business transacted by Brown & Root was the negotiation and execution of the Agreement outside of the State of Delaware. The fact that a part of the Agreement included the recreation of Parco, a Delaware corporation, does not satisfy **221**§ 3104(c)(1). *See Greenly v. David,* Del. Supr., No. 112, 1983, per curiam (January 17, 1984). Nor is the Agreement a contract to provide goods or services in Delaware. The Agreement provides for the formation of Parco as a holding company owning the stock of two New Jersey corporations. Although it is true that the parties expected the New Jersey operating companies to do business in Delaware (among other other states), I find that this prospect of providing services in Delaware is insufficient to satisfy § 3104(c)(2).

[4]  Alternatively, plaintiff argues that Brown & Root regularly does or solicits business in Delaware and derives substantial revenue from services performed here, thereby satisfying § 3104(c)(4). The Delaware Supreme Court recently noted that the 'regularly does or solicits business' language is satisfied if defendant regularly advertises in

Delaware or carries on some other continuous course of activity in the State. *Waters v. Deutz Corporation*, Del. Supr., No. 186, 1983, McNeilly, J. (May 11, 1984). The evidence establishes that Brown & Root has only advertised its services in Delaware on three occasions in 1983 at which time advertisements were published in the *Wall Street Journal* and *Business Week*. These contacts occurred after the filing of this action and do not constitute a continuous course of activity in any event. The isolated visits to Delaware by Brown & Root personnel likewise are insufficient to confer personal jurisdiction under § 3104(c)(4). The evidence indicates that during the six years before the complaint was filed Brown & Root personnel were in Delaware on five occasions. While it is not necessary that Brown & Root's activities in Delaware amount to the doing of business for purposes of this subsection, a continuous course of activity requires something more than the infrequent and sporadic visits documented in this case. The result is not changed by the fact that in addition to the three advertisements and handful of visits to Delaware, Brown & Root retained Delaware counsel in late 1982 to assist in the dissolution of Parco. The act of obtaining local counsel is not evidence of a course of activity in the State at least where, as here, counsel was retained for the purpose of terminating business activities.

[5]**3**  The receipt of substantial revenues from services rendered in the State provides an alternative basis for jurisdiction under § 3104(c)(4). Plaintiff argues that the $34,000 generated by the Del. DOT contract in 1983 is 'substantial' within the meaning of the statute. In addition, Brown & Root concedes that it received substantial revenues from contracts with Delaware based corporations which were performed outside of this State. These out of state revenues, however, cannot be considered because § 3104(c)(4) expressly requires that the **222** 'substantial revenue' be derived from 'services, or things used or consumed in the State. . . .' Thus, the issue is whether the receipt of $34,000 from one contract executed and performed after the complaint was filed constitutes substantial revenue.

Plaintiff relies upon the decisions in *Hill v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 6

Not Reported in A.2d, 1984 WL 8255 (Del.Ch.), 10 Del. J. Corp. L. 215
**(Cite as: Not Reported in A.2d)**

*Equitable Trust Co.*, 562 F. Supp. 1324 (D. Del., 1983) and *Plumb v. Cottle*, 492 F. Supp. 1330 (D. Del., 1980) in support of its position. In *Hill*, defendant's Delaware revenue was $50,000 and in *Plumb* defendant received $57,000 over a two year period. However, in both of those cases the court found that defendants were also doing business in Delaware and the revenues were generated from more than one transaction in the State. In *Fischer v. Hilton*, 549 F. Supp. 389 (D. Del., 1982), on the other hand, the sale of one tractor-trailer for $34,500 was found insufficient to satisfy the substantial revenue requirement. The court there noted that the other provisions of § 3104(c)(4) require a regular or persistent course of activity and that it is logical to require more than a single transaction under the substantial revenue test. I find the reasoning of the *Fisher* decision to be persuasive and conclude that the $34,000 in revenues from the Del. DOT contract does not constitute substantial revenue under § 3104(c)(4). In addition, Brown & Root did not receive that money until after the complaint was filed, thus providing an independent basis for rejecting the receipt of those revenues as a basis for jurisdiction. *See Harry David Zutz v. Jackson Cross Co.*, D. Del., C.A. 82-148, Wright, S.J. (June 10, 1983).

[6] Finally, plaintiff attempts to assert jurisdiction over Brown & Root pursuant to 8 *Del. C.* § 382. That statute provides the means for acquiring personal jurisdiction over a foreign corporation doing business generally in Delaware where the cause of action arises out of a particular business transaction in Delaware. *See General Foods Corp. v. Haines & Co.*, 458 F. Supp. 1167 (D. Del., 1978). Based upon my finding that Brown & Root's limited contacts with this State do not satisfy the more liberal requirements of § 3104(c)(4), it follows that jurisdiction cannot be sustained under the corporate long-arm statute. Accordingly, Brown & Root's motion to dismiss for lack of personal jurisdiction is granted.

II.

[7][8] Halliburton moved to dismiss for failure to state a claim and failure to join an indispensable

party. On the first ground, a motion to dismiss will only be granted where it appears to a reasonable certainty that plaintiff would not be entitled to relief under any set of **223 facts which could be proven to support the claim. *Fish Engineering Corporation v. Hutchinson*, Del. Ch., 162 A.2d 722 (1960). In reviewing the allegations relating to Halliburton, all well pleaded factual allegations must be accepted, but legal conclusions and unsupported factual conclusions are not deemed admitted. *Weinberger v. U.O.P.*, Del. Ch., 409 A.2d 1262 (1979).

*4 Counts I, II and V are the only ones that relate to Halliburton directly or indirectly. Count I is a breach of contract claim alleging that Brown & Root and Halliburton (i) failed to act in good faith to help maintain Parco, (ii) used Parco personnel for their own benefit and (iii) usurped corporate opportunities of Parco. A careful review of the facts asserted in support of these conclusory allegations reveals that all of the alleged wrongs were committed by Brown & Root. For example, Brown & Root allegedly made various representations to Parker as an inducement to the formation of Parco ( ¶ ¶15, 16); Brown & Root failed to compensate Parco for services performed by Parco personnel at Brown & Root (¶24); Brown & Root failed to assign work to Parco and employed former Parco Vice Presidents (¶¶27, 28); and Brown & Root failed to honor its commitment to Parker and Parco ( ¶29). Thus, there are no factual allegations which, if true, would impose liability on Halliburton for the wrongs alleged in Count I of the amended complaint. This conclusion is confirmed by the allegations in Count I as to the harm suffered-Parker's lost profits 'from projects and opportunities . .. which Brown & Root has arrogated to itself . . .' (¶39) and Parco's lost profits 'from projects and opportunities it developed and would have developed had not Brown & Root arrogated such opportunities and prospects to itself.' (¶40).

[9] Count II of the amended complaint is a claim for breach of fiduciary duty. Halliburton is alleged to owe Parker such a duty 'by virtue of its control of Brown & Root.' (¶42). From this allegation Parker's theory appears to be that Halliburton may be held liable for Brown & Root's breaches of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1984 WL 8255 (Del.Ch.), 10 Del. J. Corp. L. 215
**(Cite as: Not Reported in A.2d)**

fiduciary duty for the sole reason that Brown & Root is wholly owned by Halliburton. However, the amended complaint contains no allegations of fraud or equitable considerations which would justify disregarding the separate corporate entities. *See Pauley Petroleum Inc. v. Continental Oil Company*, Del. Supr., 239 A.2d 629 (1968). Parker cited no authority, and I am aware of none, holding a parent company liable for breaches of fiduciary duty by its subsidiary without piercing the corporate veil.

[10][11] Parker's brief suggests that its breach of fiduciary duty claim against Halliburton is based upon the premise that Halliburton **224 is a co-joint venturer under the Agreement. If the amended complaint could support such a finding, Halliburton would owe a fiduciary duty and be accountable to its co-venturers. *Pan American T. I. Corp. v. Commercial Metals Co.*, Del. Ch., 154 A.2d 151 (1959). A joint venture is an enterprise undertaken by several parties to carry out a single business purpose for their mutual profit in which they combine their property, skill, knowledge and money. *J. Leo Johnson, Inc. v. Carmer*, Del. Supr., 156 A.2d 499 (1959).

The amended complaint does not allege facts which support the joint venture theory. There are no allegations that Halliburton contributed money, property or know-how pursuant to the Agreement or that Halliburton was to share in the profits generated by Parco or its subsidiaries. On the contrary, the relevant factual allegations indicate that Parker and Brown & Root were to be the only participants in the joint venture. Parker alleges:

*5 The . . . Agreement set out the following as its ' purpose':
'The Shareholders [plaintiff and defendant Brown & Root] are of the firm belief that a combination of their respective talents and resources could be mutually beneficial in the establishment and operation of an engineering center to be situated in the southern New Jersey Delaware Valley area.' (¶ 2)

Parker and Brown & Root are the two 50% stockholders of Parco. (¶¶3, 9). Parker was to

provide its share of the financing as well as management, engineering and support personnel ' for a company which would combine the efforts of plaintiff and Brown & Root to pursue business in the eastern United States. . . .' (¶14). A preliminary Letter of Agreement setting forth the manner in which the venture would be structured was executed by Parker and Brown & Root. (¶18). The only factual allegation tying Halliburton to this venture is that Halliburton executed the Agreement. It cannot be inferred from this one fact that Halliburton is a joint venturer with Parker and Brown & Root.

Count V of the amended complaint is a claim for damages to Parker's business reputation. That claim is predicated upon the earlier allegations of breach of contract and breach of fiduciary duty. Since I have concluded that those underlying claims do not apply to Halliburton, Count V, like Counts I and II, must be dismissed as to Halliburton for failure to state a claim.

**225 III.**

[12][13] The remaining motion to dismiss was brought by the three Parco directors named as defendants for failure to join an indispensable party-Brown & Root. The directors argue that the claims against them are inextricably tied to the alleged wrongs committed by Brown & Root and that it would be 'unconscionable' to require them to defend this action in Brown & Root's absence. From the proceeding analysis of the allegations in the amended complaint, it is apparent that Brown & Root has a substantial interest in the subject of this litigation which would qualify it as a party to be joined if feasible under Chancery Court Rule 19(a). Since Brown & Root cannot be made a party, the Court must consider the following factors in deciding the directors' motion-(1) the extent to which a judgment in this action would be prejudicial to Brown & Root or the directors; (2) the extent to which any such prejudice can be avoided or lessened; (3) the adequacy of any judgment rendered in Brown & Root's absence; and (4) the adequacy of plaintiff's remedy if this action is dismissed. Chancery Court Rule 19(b).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                 Page 8

Not Reported in A.2d, 1984 WL 8255 (Del.Ch.), 10 Del. J. Corp. L. 215
**(Cite as: Not Reported in A.2d)**

In Count III of the amended complaint, plaintiff alleges that the director defendants breached their fiduciary duties to Parco by permitting and assisting the breaches of fiduciary duty and acts of self-dealing alleged against Brown & Root. Thus, a finding of liability on the part of the defendant directors would depend upon a similar finding as to Brown & Root. Given the allegations of the amended complaint, there does not appear to be any way in which the defendant directors' conduct could be examined without litigating Parker's claims against Brown & Root. I am satisfied not only that Brown & Root would be substantially prejudiced by a decision adverse to the defendant directors but also that there is little if anything that can be done to avoid or reduce the prejudicial impact of such a decision. These considerations, coupled with the fact that Parker would be able to obtain complete relief in an action brought in Texas, mandates the conclusion that the claims against the defendant directors should not be allowed to proceed in the absence of Brown & Root. Accordingly, defendant directors' motion to dismiss is granted.

**\*6** IT IS SO ORDERED.

Del.Ch. 1984
J. Royal Parker Associates, Inc v. Parco Brown & Root, Inc
Not Reported in A.2d, 1984 WL 8255 (Del.Ch.), 10 Del. J. Corp. L. 215

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in A.2d                                                                                        Page 1

Not Reported in A.2d, 1998 WL 8849 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Ohrstrom v. Harris Trust Co. of New York
Del.Ch.,1998.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Court of Chancery of Delaware.
George L. OHRSTROM, Jr., and Ohrstrom &
Company, Plaintiffs,
v.
HARRIS TRUST COMPANY OF NEW YORK, a
New York Corporation, Dover Corporation, a
Delaware Corporation and DII Group, Inc., a
Delaware Corporation, Defendants.
No. CIV. A. 15709.

Jan. 8, 1998.

William Prickett, Esquire, and Heather D. Jefferson,
Esquire, of Prickett, Jones, Elliott, Kristol &
Schnee, Wilmington, Delaware, Attorneys for
Plaintiffs.
Jesse A. Finkelstein, Esquire, and Raymond J.
DiCamillo, Esquire, of Richards, Layton & Finger,
Wilmington, Delaware; of Counsel: Michael
Luskin, Esquire, of Luskin, Stern & Eisler LLP,
New York, New York, Attorneys for Defendant
Harris Trust Company of New York.
Michael D. Goldman, Esquire, and Stephen C.
Norman, Esquire, of Potter Anderson & Corroon,
Wilmington, Delaware; of Counsel: John M.
Callagy, Esquire, Patricia O. Kahn, Esquire, and
Nicholas J. Panarella, Esquire, of Kelley Drye &
Warren, LLP, New York, New York, Attorneys for
Defendants Dover Corporation and DII Group, Inc.

MEMORANDUM OPINION
CHANDLER, Chancellor.
**\*1** Before the Court is a motion to dismiss for lack
of personal jurisdiction brought by a New York
corporation that has served as transfer agent for the
two Delaware corporations that also are defendants
in this action. Because the transfer agent does not

conduct any business in Delaware and does not
have minimum contacts with Delaware, I conclude
that this Court is without personal jurisdiction over
the transfer agent. Therefore, I grant its motion to
dismiss.

I. BACKGROUND

This action is brought by shareholders, George
Ohrstrom and G.L. Ohrstrom and Co. (collectively,
"Plaintiffs"), against defendants, Dover Corporation
("Dover"), DII Group ("DII") and Harris Trust
Company of New York ("Harris Trust"). Dover is
a publicly-traded Delaware corporation. Since
1955 Dover's stock has split eleven times. DII, a
publicly-traded Delaware corporation, was spun off
from Dover in March 1993. In the spin-off, Dover
shareholders received one share of DII for every ten
registered shares of Dover.

Harris Trust, a New York corporation, has been
Dover's transfer agent and stock registrar since
1984. In this capacity, Harris Trust serves as
Dover's agent with respect to stock transfers and
specific shareholder activities. [FN1] Harris Trust
also served as the exchange agent for the spin-off of
DII. It is alleged that Harris Trust currently serves
as DII's transfer agent and registrar.[FN2]

> FN1. The following is a list of duties
> Harris Trust assumed by contract when
> Harris Trust became the transfer agent for
> Dover:
> Provide[] certain shareholder services to
> customers, including acting as a transfer
> agent, cotransfer agent, registrar, drop
> agent or dividend disbursing agent in
> respect [to] equity securities issued by
> such customers, providing proxy
> processing services, including acting as
> inspector of elections at shareholder
> meetings, providing services in connection

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                    Page 2

Not Reported in A.2d, 1998 WL 8849 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

with dividend reinvestment plans of such customers and providing tender offer agency, exchange agency and similar agency services to customers on a nonrecurring, transactional basis with respect to mergers, tender offers, exchange offers, subscription offerings and conversions.

FN2. Harris Trust denies that it is currently the transfer agent for DII, but this dispute is not material to this decision.

Plaintiffs allegedly held unregistered certificates for 11,154 shares of Dover stock (the "Unregistered Shares"). These certificates bore various dates ranging between 1956 and 1969. In May 1993, Harris Trust registered the shares at Plaintiffs' request.

Thereafter, Plaintiffs requested stock certificates and consequent cash dividends stemming from the stock dividends, stock splits, and DII spin-off shares that Plaintiffs would have earned on the Unregistered Shares had they been registered at the time of these events. Plaintiffs assert that this amounts to approximately 950,000 Dover shares, 95,000 DII shares (collectively referred to as the " Dividend Shares") and cash dividends of about $6 million plus interest.[FN3] Defendants refused to give Plaintiffs the Dividend Shares and cash dividends that they requested because, among other things, the underlying shares were not registered to Plaintiffs at the time the dividends were declared. Finally, Plaintiffs assert that Harris Trust's transfer records reflected that Plaintiffs owned approximately 11,000 Dover shares for which they did not possess stock certificates (the " No-certificate Shares").

FN3. The parties have estimated that the Dividend Shares are worth about $70 million, based on publicly-traded market values.

Harris Trust's 1993 registration of the Unregistered Shares resulted in a 10,954 share over-issue of the total number of Dover shares outstanding. To remedy this over-issue problem, Harris Trust cancelled approximately 4,600 of Plaintiffs' No-certificate Shares. Plaintiffs insist that Defendants are obligated to provide stock certificates for the cancelled shares, as well as for all other shares registered with Harris Trust for which they do not possess stock certificates.[FN4]

FN4. The record is unclear as to whether Plaintiffs also seek an additional 2,000 shares stemming from stock splits and cash dividends subsequent to 1993 on 2,000 of the shares which were cancelled. It is equally unclear why Plaintiffs apparently seek Dividend Shares and cash dividends for only 2,000 of the cancelled shares and not all of the cancelled shares.

**\*2** Harris Trust contends that it should be dismissed from this suit because this Court lacks personal jurisdiction over it. Specifically, Harris Trust asserts that Delaware's long-arm statute, 10 *Del. C.* § 3104, does not reach the activities that Harris Trust performs for Dover in its capacity as transfer agent and, furthermore, that to exercise personal jurisdiction over Harris Trust would offend traditional notions of due process of law under the Fourteenth Amendment to the United States Constitution.

Harris Trust notes that the negotiations leading to Harris Trust's engagement as transfer agent and stock registrar for Dover took place in New York. Except for certain data processing functions (which are performed in Chicago), Harris Trust performs all of its duties as transfer agent and stock registrar for Dover in its New York office. Further, Harris Trust has no office, address, post office box, telephone number or telephone listing in Delaware. Harris Trust is not registered to do business in Delaware; nor does it have an agent for service of process in Delaware. In short, Harris Trust neither solicits nor conducts any business in Delaware.

Plaintiffs contend that Harris Trust is the "alter ego" of Dover, acting on behalf of the Delaware corporation. According to this argument, Harris Trust does everything that Dover would normally

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 3

Not Reported in A.2d, 1998 WL 8849 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

do with respect to issuing and transferring shares and interacting with shareholders of the corporation (even though Harris Trust performs these essential functions in New York). As such, Plaintiffs argue that Delaware's long-arm statute reaches Harris Trust, and also that it is within the parameters of the Fourteenth Amendment to subject Harris Trust to personal jurisdiction in Delaware.

## II. MOTION TO DISMISS

On a motion to dismiss, once the defendant has challenged personal jurisdiction, the plaintiff bears the burden of demonstrating a factual basis for asserting jurisdiction over the defendant.[FN5] The plaintiff must allege facts sufficient to satisfy not only Delaware's long-arm statute, but also the Due Process Clause of the United States Constitution. [FN6] If the plaintiff is unable to allege facts sufficient to satisfy either of these two requirements, the defendant's motion to dismiss will be granted.

> FN5. *Newspan, Inc. v. Hearthstone Funding Corp.,* Del. Ch., C.A. No. 13304, Allen, C. (May 10, 1994), slip op. at 7-8.

> FN6. *Hercules Inc. v. Leu Trust and Banking,* Del.Supr., 611 A.2d 476, 483 (1992); *LaNuova D & B, S.p.A v. Bowe Co.,* Del.Supr., 513 A.2d 764, 768 (1986).

In this case, Plaintiffs not only have failed to allege facts that satisfy Delaware's long-arm statute, but they also have failed to allege jurisdictional facts that comport with traditional notions of fair play and substantial justice as required by the Fourteenth Amendment. Accordingly, Plaintiffs have failed to demonstrate that this Court may assert personal jurisdiction over Harris Trust.

## III. ANALYSIS

### A. *Delaware's Long-Arm Statute*

The Delaware long-arm statute [FN7] provides four

separate grounds upon which a Delaware court may exercise jurisdiction over a nonresident defendant. [FN8] First, a Delaware court may exercise personal jurisdiction over a nonresident defendant that transacts business in Delaware. Plaintiffs argue that because Harris Trust is the "alter ego" of Dover, Harris Trust transacts business in Delaware. Plaintiffs cite the following facts to support this contention:

> FN7. 10 *Del.C.* § 3104 provides in pertinent part that:
> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply services or things in this State;
> (3) Causes tortious injury in the State by an act or omission in this State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

> FN8. *See Transportes Aereos de Angola v. Ronair, Inc.,* 544 F.Supp. 858, 964 (D.Del.1982) (noting the broad construction of Delaware's long-arm statute to assert jurisdiction "to the maximum perimeters of the due process clause").

**\*3** • Dover is a Delaware corporation.
• Harris Trust entered into a contract to act as an agent for Dover in connection with Dover stock transfers and shareholder relationships.
• The situs of Dover's stock is Delaware, and Delaware law protects Dover and Dover's shareholders.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1998 WL 8849 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

• A Delaware corporation owns Harris Trust.
• The activities of Harris Trust are directly attributable to Dover because Dover, as Harris Trust's principal, directs Harris Trust's activities.

This argument, however, does not have merit. The unalterable fact is that Harris Trust transfers and registers shares of Dover stock from its offices in New York. That Harris Trust provides stock-related services for a corporation organized under Delaware law cannot change this fact.[FN9]

> FN9. *See In re Chambers Dev. Co., Inc. Shareholders Litig.,* Del. Ch., C.A. No. 12508, Chandler, V.C. (May 20, 1993), slip op. at 9-11 (accounting firm's audit of Delaware corporation performed outside of Delaware not sufficient contact to confer personal jurisdiction).

The record clearly supports a finding that Harris Trust does not conduct business in Delaware. It has no place of business in Delaware, no telephone number in Delaware, no post office box or mailing address in Delaware, and no agent for the service of process in Delaware.

Under the long-arm statute, the Court may also exercise personal jurisdiction over a nonresident defendant when the defendant contracts to supply services in Delaware.[FN10] As discussed earlier, however, Harris Trust services Dover from its New York office.[FN11] Moreover, "merely contracting with an entity that is incorporated within a forum state does not provide necessary connections between the contract and the forum to support a finding of jurisdiction." [FN12] In this case, even the negotiations leading up to the contract between Harris Trust and Dover took place in New York. [FN13] Accordingly, this Court cannot find that Harris Trust has contracted to supply services in Delaware. Therefore, the second prong of Delaware's long-arm statute does not confer personal jurisdiction over Harris Trust.

FN10. 10 *Del.C.* § 3104(c)(2).

FN11. Dover's office is also located in New York.

FN12. *Abajian v. Kennedy,* Del. Ch., C.A. No. 11425, Allen, C. (Jan. 17, 1992), slip op. at 24 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

FN13. *See Abajian,* slip op. at 24.

Plaintiffs further contend that this Court may assert jurisdiction over Harris Trust pursuant to the third prong of Delaware's long-arm statute.[FN14] Under subsection (c)(3), the Court may exercise personal jurisdiction if the plaintiff demonstrates that the nonresident defendant has caused a tortious injury in Delaware and that this injury was due to defendant's act or omission in Delaware.

FN14. 10 *Del.C.* § 3104(c)(3).

Assuming for the sake of argument that Plaintiffs were injured in Delaware as a result of Harris Trust's conduct,[FN15] Plaintiffs still have failed to demonstrate that their injury occurred as a result of an act or omission *that took place* in Delaware. As previously stated, Harris Trust's office is in New York. All of the acts Harris Trust undertook that Plaintiffs allege caused their injury took place in New York, including the over-issuance of the Dover shares, the cancellation of the No-certificate Shares, and the failure to furnish Plaintiffs the requested stock certificates. In short, none of the acts that are alleged to have caused Plaintiffs' injury, with respect to Harris Trust, took place in Delaware. Therefore, Plaintiffs cannot rely on the third prong of Delaware's long-arm statute to secure personal jurisdiction over Harris Trust.

> FN15. Injury occurred in Delaware, according to Plaintiffs, because of their status as stockholders in a Delaware corporation.

**\*4** Finally, under § 3104(c)(4) of Delaware's long-arm statute, the Court may assert jurisdiction

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                    Page 5

Not Reported in A.2d, 1998 WL 8849 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

over a nonresident where the plaintiff demonstrates that: (1) the defendant has injured the plaintiff; (2) this injury occurred as a result of an act or omission outside of the state; and (3) the defendant " regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State." [FN16]

> FN16. 10 *Del.C.* § 3104(c)(4).

Assuming that the first two elements of subsection (c)(4) are satisfied, Plaintiffs still have failed to establish that Harris Trust regularly does business in Delaware, engages in a persistent course of conduct in Delaware or derives substantial revenues from services performed in Delaware.[FN17] Plaintiffs argue that Harris Trust regularly does business in Delaware, engages in a persistent course of conduct in Delaware and derives substantial revenues from services performed in Delaware by virtue of the fact that apparently 360 of Harris Trust's 544 clients are incorporated in Delaware.

> FN17. *See In re Chambers,* slip op. at 10; *Finkbiner v. Mullins,* Del.Super., 532 A.2d 609, 620 (1987).

That Harris Trust regularly registers and transfers stock from its New York office for 360 Delaware corporations, however, does not establish that Harris Trust regularly transacts business in Delaware, engages in a persistent course of conduct in Delaware or derives substantial revenues from services performed in Delaware. All that it establishes is that Harris Trust performs services for a number of companies whose state of incorporation is Delaware.

Under Delaware law, in order to be found to engage in a persistent course of conduct, the nonresident must have a "presence" in Delaware.[FN18] In *Finkbiner,* the Court found that a nonresident car dealer who sold hundreds of cars to Delaware dealers did not have a presence in Delaware sufficient to establish a persistent course of conduct in Delaware.[FN19] The Court based its decision on

the fact that all of the elements of sale took place in Maryland, including transfer of possession and control of the cars, transfer of title, and receipt of payment.[FN20]

> FN18. *Finkbiner,* 532 A.2d at 619.

> FN19. *Id.*

> FN20. *Id.*

This case is no different from *Finkbiner.* Just as the nonresident car dealer in *Finkbiner* performed all of the elements of sale in Maryland, Harris Trust performs its entire role as transfer agent and registrar for Dover in New York. Moreover, this Court is unable to find that, as Dover's transfer agent, Harris Trust has engaged in *any* course of conduct in Delaware, let alone a course of conduct sufficient to establish a jurisdiction-conferring presence in Delaware.[FN21] Accordingly, this Court holds that Harris Trust's activities do not satisfy the requirements of the fourth prong of Delaware's long-arm statute.

> FN21. Because Harris Trust provides no services in Delaware, it cannot "derive[] substantial revenues from services performed in Delaware."

Just as in *Finkbiner,* where the Court found that the plaintiff did not carry his burden of establishing a basis for personal jurisdiction over the nonresident car dealer pursuant to subsection (c)(4) of Delaware's long-arm statute, this Court similarly finds that Plaintiffs have not carried their burden of demonstrating a basis for personal jurisdiction over Harris Trust pursuant to subsection (c)(4) of Delaware's long-arm statute. In sum, Plaintiffs have not persuaded the Court that they have satisfied any of the four grounds upon which personal jurisdiction may be predicated under 10 *Del. C.* § 3104.

### B. *Minimum Contacts*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                     Page 6

Not Reported in A.2d, 1998 WL 8849 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

**\*5** Even if Plaintiffs were able to demonstrate that Harris Trust's activities fell within the ambit of Delaware's long-arm statute, this Court would still be compelled to grant Harris Trust's motion to dismiss, based on Plaintiffs' failure to demonstrate that this Court's exercise of jurisdiction over Harris Trust would not offend "traditional notions of fair play and substantial justice" as required by the Fourteenth Amendment.[FN22]

> FN22. *See Newspan,* slip op. at 12 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Under the Due Process Clause of the Fourteenth Amendment, Plaintiffs must establish that Harris Trust has minimum contacts with Delaware of such a nature and quality to indicate that: (1) Harris Trust purposely availed itself of the privilege of conducting activities within Delaware, and (2) Harris Trust should reasonably have anticipated being haled into court in Delaware.[FN23]

> FN23. *Id.* at 13-14.

Plaintiffs argue that by entering into a contract to become the transfer agent for Dover, a Delaware corporation, and undertaking the concomitant duties of transferring shares of a Delaware corporation, Harris Trust has availed itself of the privilege of conducting activities in Delaware and invoking the protection and benefits of Delaware's laws. I disagree. Harris Trust's contract with Dover " alone, without more, cannot automatically establish sufficient minimum contacts such that [Harris Trust] would expect to defend an action in [Delaware]."[FN24] Harris Trust "must have 'continuous and systematic' general business contacts with Delaware for a court to exercise personal jurisdiction over it in accordance with Due Process."[FN25]

> FN24. *Id.* at 14 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528, 545 (1985)).

> FN25. *In re Chambers,* slip op. at 11 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

In this case, the record clearly shows that Harris Trust has never had continuous and systematic general business contacts with Delaware. In fact, it appears from the record that, as transfer agent for Dover, Harris Trust has had no business contacts whatsoever with Delaware. That Delaware law governs Dover and protects Dover's stockholders does not establish minimum contacts sufficient to confer personal jurisdiction over Harris Trust.[FN26] Similarly, the fact that the situs of *Dover* stock is Delaware does not satisfy the Constitution's minimum contacts standard.[FN27] The only connection between Harris Trust and Delaware is that Dover is incorporated in Delaware. This nexus is insufficient, in my opinion, to pass constitutional muster.

> FN26. *See Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

> FN27. *Meeker v. Bryant,* Del. Ch., C.A. No. 6245, Hartnett, V.C. (May 12, 1981), slip op. at 8.

Additionally, Plaintiffs have failed to show that the assertion of personal jurisdiction over Harris Trust would comport with "traditional notions of fair play and substantial justice."[FN28] The burden on Harris Trust to defend this action in Delaware would be formidable, given that Harris Trust has absolutely no contacts with Delaware. Furthermore, Delaware has little, if any, interest in adjudicating a dispute between Plaintiffs and Harris Trust. This action does not involve a unique issue of Delaware law. It is merely a commercial dispute among individuals and entities based in New York. Accordingly, I find that it would be unreasonable for Harris Trust to be required to defend against this action in Delaware.

> FN28. *LaNuova,* 513 A.2d at 769 (citing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 7

Not Reported in A.2d, 1998 WL 8849 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

     *International Shoe,* 326 U.S. at 316).

**\*6** Finding that Plaintiffs have not demonstrated a basis for exercising personal jurisdiction over defendant Harris Trust under Delaware's long-arm statute or a basis for concluding that the exercise of such jurisdiction over Harris Trust would comport with traditional notions of fair play and substantial justice under the Fourteenth Amendment, I grant Harris Trust's motion to dismiss the complaint against it for lack of personal jurisdiction.

IT IS SO ORDERED.

Del.Ch.,1998.
Ohrstrom v. Harris Trust Co. of New York
Not Reported in A.2d, 1998 WL 8849 (Del.Ch.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in A.2d                                                                                    Page 1

Not Reported in A.2d, 1984 WL 247023 (Del.Super.)
**(Cite as: Not Reported in A.2d)**



Ramada Inns, Inc. v. Drinkhall
Del.Super.,1984.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
  Superior Court of Delaware, New Castle County.
  RAMADA INNS, INC., Hotel Ramada of Nevada,
  Adamar of New Jersey, Inc., and Ramada Hotel
        Operating Company, Plaintiffs,
                        v.
  James A. DRINKHALL, John Andrew and Dow
      Jones & Company, Defendants.
          **Civ. A. No. 83C-AU-56.**

              Submitted: March 5, 1984.
              Decided: May 17, 1984.


On Motion Of Defendants James A. Drinkhall And
John Andrew To Dismiss For Lack Of Personal
Jurisdiction.

Thomas C. Green (argued) of Sharp, Green &
Lankford, Washington, DC, of Counsel; F. Alton
Tybout of Tybout, Redfearn, Casarino & Pell,
Wilmington, for plaintiffs.
Susan E. Weiner (argued) and Gregory L. Diskant
of Patterson, Belknap, Webb & Tyler, New York
City, of Counsel; Edmund N. Carpenter, II and
James T. McKinstry of Richards, Layton & Finger,
Wilmington, for defendants.
TAYLOR, Judge.
**\*1** This is a libel suit against Dow Jones &
Company [corporate defendant], publisher of the
Wall Street Journal [Journal], and individual
defendants James A. Drinkhall [Drinkhall] and John
Andrew [Andrew]. The alleged libel occurred in
two articles which appeared in the Journal relating
to the conduct of plaintiffs' business activities. One
article was written by Drinkhall and the other
written by Andrew. Plaintiffs are four
corporations, the two corporations whose names
commence with the name "Ramada" are

incorporated in Delaware, one of the others is
incorporated in New Jersey and the other in
Nevada. The corporate defendant is incorporated
in Delaware. Neither individual defendant is a
Delaware resident. Defendant Drinkhall was and is
a citizen of California. Defendant Andrew was a
citizen of California until January, 1984.

Service was undertaken upon the individual
defendants in accordance with 10 *Del.C.* § 3104.
Service was made upon the corporate defendant by
serving its registered agent in Delaware. The
individual defendants have moved to dismiss for
lack of jurisdiction over the person.


                          I

10 *Del.C.* § 3104 in its present form was enacted by
61 *Del.Laws* Ch. 471 which became effective July
11, 1978. The alleged libelous publications
occurred August 17, 1981 and August 20, 1981, and
this suit was filed August 16, 1983. Therefore, the
current § 3104 determines the circumstances under
which personal jurisdiction can be exercised in this
State over the individual defendants in this suit.

Plaintiffs assert that jurisdiction exists over the
individual defendants by virtue of 10 *Del.C.* §
3104(c)(3) and § 3104(c)(4), which apply to a
non-resident who:
(3) Causes tortious injury in the State by an act or
omission in this State; [or]
(4) Causes tortious injury in the State or outside of
the State by an act or omission outside the State if
he regularly does or solicits business, engages in
any other persistent course of conduct in the State
or derives substantial revenue from services, or
things used or consumed in the State.


Plaintiffs have cited *Waters v. Deutz Corp.,*
Del.Super., 460 A.2d 1332 (1983) in support of the
proposition that an expansive approach should be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                        Page 2

Not Reported in A.2d, 1984 WL 247023 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

taken interpreting long arm statutes as coextensive with constitutional limitations. *Waters,* after noting that the Supreme Court had declared in *Eudaily v. Harmon,* Del.Supr., 420 A.2d 1175 (1980), that the language of 10 *Del.C.* § 3104 had its inception in § 1.03. of the *Uniform Interstate and International Procedure Act,* 13 *ULA,* p. 466 stated:
Derived from the Illinois Long Arm Statute the Delaware statute may be similarly construed by recourse to the legislative and decisional law of Illinois.

That statement in *Waters* was made focusing on § 3104(c)(1) which gives long arm personal jurisdiction over a non-resident who:Transacts any business or performs any character of work or service in the State.

**\*2** Since that paragraph parallels the Illinois statute (except for the inclusion of the words "or performs any character of work or service"), the quotation from *Waters* was correct in the context of that case. However, *Waters* did not address the paragraphs which plaintiffs rely on here. Therefore, *Waters'* reliance on Illinois decisions does not make Illinois decisions controlling here. It appears from a search of its legislative history that the present Delaware long arm statute was drawn in substantial part from the Maryland long arm statute. Cf. *Annotated Code of Maryland* (1974), Courts and Judicial Proceedings, § 6-103 et seq. In turn, the Maryland long arm statute is reputed to have been "patterned after" the *Uniform Interstate Procedure Act.* Cf. 24 *A.L.R.3d* 532, 623. § 3104(c) tracks with some variation subsection (a) of the *Uniform Act.* Ibid p. 554.

The Illinois statute, *Ill.Stat.Ann.* c. 110, § 17(1), which plaintiffs refer to as the progenitor of 10 *Del.C.* § 3104, contains a paragraph which provides that a person who commits "a tortious act within this State," submits to jurisdiction in the State. Cf. *Gray v. American Radiator & Standard Sanitary Corp.,* Ill.Supr., 176 N.E.2d 761 (1961). That paragraph of the Illinois statute does not appear in § 3104. Conversely, paragraphs (3) and (4) of § 3104 do not appear in the Illinois statute. Therefore, the Delaware statute and the Illinois statute differ materially in their treatment of the subject under

consideration here.

It appears that of the various long arm statutes greater coverage is accorded to statutes which refer to tortious acts, tortious conduct or tortious injury with minimum qualifying language. Cf. 24 *A.L.R.3d* 532, 567-9.

Where qualifying language is used, the Court should not ignore that language out of a desire to afford maximum jurisdictional coverage.

II

Plaintiffs argue that 10 *Del.C.* § 3104(c)(3) only requires injury within Delaware in order to acquire long arm jurisdiction. The cases which plaintiffs cite in support of that proposition generally involve statutes which are patterned after the Illinois statute. These refer either to tortious act or tortious injury, but do not separately mention both injury and act as qualifying elements. Plaintiffs' argument rests on the proposition that all that is required under paragraph (3) is a "tortious act within the state"-as is the Illinois requirement. This argument overlooks the Delaware language, "tortious injury in the State by an act or omission within this State". Literally, Delaware law requires both a tortious act within the State and an act or omission within the State. The dual reference to "within the State" indicates that the draftsman intended that there are two separate events, each within the State. This is inconsistent with the rationale of the "tortious act" states which apply the reasoning that a tort which produces injury within the state is in itself an act within the state.

**\*3** The Supreme Court in *Eudaily v. Harmon,* supra, noted that 10 *Del.C.* § 3104 had its inception in § 1.03. of the *Uniform Interstate and International Procedure Act.* § 3104(c)(3) follows, with only slight modification, § 1.03.(1)(3). The Commissioners' Comment which follows § 1.03. of the *Uniform Act,*[FN1] 13 *ULA* 466, states (at page 468):
Section 1.03(1)(3) may have a narrower range of application than statutes which base jurisdiction upon the "commission of a tortious act" within the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1984 WL 247023 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

state (see, e.g., Ill.Stat.Ann. c. 110, § 17(1)(b); Mc.Rev.Stat.Ann. c. 112, § 21(I)(B); N.Y.C.P.L.R. § 302(a)(2) (effective Sept. 1, 1963); N.C.Gen.Stat. §§ 55-145(4), or upon the commission of a tort "in whole or in part" in the state. See, e.g., Minn.Stat.Ann. § 303.13(3); Vt.Stat.Ann. tit. 12, § 855. Some of these statutes have been interpreted to cover acts or omissions outside the state.

This Comment makes it clear that where more specific language than that of the Illinois statute was used it was intended to be applied literally and not to be given the broad brush scope given the Illinois type statute. In the light of this background cases which have applied statutes patterned after the Illinois statute such as the following cases are not of assistance in interpreting paragraph (3): Cf. *Thiry v. Atlantic Monthly Company,* Wash.Supr., 445 P.2d 1012 (1968); *Rebozo v. Washington Post Company,* 5 Cir., 515 F.2d 1288 (1975); *Ammon v. Kaplow,* D.Kans., 468 FS 1304 (1979); *Buckley v. New York Post Corp.,* 2 Cir., 373 F.2d 175 (1967); *Manqual v. General Battery Corp.,* 1 Cir., 710 F.2d 15 (1983); *Novel v. Garrison,* N.D.Ill., 294 F.Supp. 825 (1969); *Process Church of the Final Judgment v. Sanders,* N.D.Ill., 338 F.Supp. 1396 (1972). Similarly, cases involving statutes which extend jurisdiction to cover "torts, in whole or in part, in the state involving residents of the state" are distinguishable. *Edwards v. Associated Press,* 5 Cir., 512 F.2d 258 (1975); *McBride v. Owens,* S.D.Tex., 454 FS 731 (1978); *Brown v. Flowers Ind., Inc.,* 5 Cir., 688 F.2d 328 (1982).

Turning to cases which have discussed language similar to that in § 3104(c)(3), the scope of that portion of the Maryland long arm statute when applied to a suit for libel was considered in *Zinz v. Evans and Mitchell Industries,* Md.Spec.App., 324 A.2d 140 (1974). The Court stated:
The appellant relies primarily on subsection (a)(3). That subsection consists of two distinct elements. There must be 1) "a tortious injury in this State" which is caused by 2) "an act or omission in this State." The appellees concede that the "tortious injury," if any, took place in Maryland. They strenuously assert, however, that the "act or omission," causing the tortious injury did not occur in Maryland. The causal act is separated from the

resulting injury. Both elements must be present before personal jurisdiction will be inferred. We find persuasive the case of Margoles v. Johns, 157 U.S.App.D.C. 209, 483 F.2d 1212 (1973). In that case, an allegedly defamatory phone call was placed from Wisconsin to Washington, D.C. The injury occurred in Washington. The Court of Appeals said, at 1217-1218:
**\*4** The "act," of course, is the act of the alleged tortfeasor-here that act, uttering defamatory statements, occurred in Wisconsin. Nothing can change that fact. The additional facts that other third party acts were necessary to consummate the tort, or that the injury itself took place within the District, cannot under our reading of the Uniform Act grant jurisdiction that is otherwise lacking. Unless we wish to delve into a magical mystery tour of "projecting presences," we must find that no jurisdiction can be afforded by virtue of section (a)(3).
The District of Columbia's "Long Arm" Statute was "purposely" similar to Maryland's and the law there announced was "completely in accord with the currently prevailing case law in Maryland." 483 F.2d at 1220.

*Zinz* was followed in *Craig v. General Finance Corp. of Illinois,* D.Md., 504 F.Supp. 1033 (1980). *St. Clair v. Richter,* W.D.Va., 250 F.Supp., 148 (1966), applying the Virginia statute which c ontained provisions similar to § 3104(c)(3) & (4), reached the same result as *Zinz.*

On the other hand, some statutes containing language similar to paragraphs (3) and (4) have given that language an expanded meaning. *Murphy v. Erwin-Wasey, Inc.,* 1 Cir., 460 F.2d 661 (1972) held that under the Massachusetts statute sending a false statement into Massachusetts with the intent that it should be relied upon to the injury of a resident of the state was a qualifying act, with a footnote observation that the Court was not persuaded that the word "act" is strictly limited to physical acts. See also, *Escude Cruz v. Ortho Pharmaceutical Corp.,* 1 Cir., 619 F.2d 902 (1980). Similarly, without analyzing the statutory wording, *Carter v. Houston Chronicle Pub. Co.,* W.D.Okl., 514 F.Supp. 12 (1980) found that language in the Oklahoma statute similar to that of paragraphs (3)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 4

Not Reported in A.2d, 1984 WL 247023 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

and (4) of § 3104(c) extends the jurisdictional long arm to the outer limits of the constitution. In *Anselmi v. Denver Post,* 10th Cir., 552 F.2d 316 (1977) the provision comparable to paragraph (3) of § 3104(c) was interpreted to require only a tortious injury in the state which requirement was satisfied by the sending of defamatory material into the state. It is noted the United States District Court in Wyoming reached a contrary conclusion involving a similar statute in *Whitaker v. Denver Post, Inc.,* D.Wyo., 401 F.Supp. 60 (1975).

10 *Del.C.* § 3104(c)(3) has been the subject of decision in the United States District Court in Delaware in *Moore v. Little Giant Indus., Inc.,* D.Del., 513 FS 1043 (1981), aff'd. In rejecting a contention that a tortious injury occurring in Delaware satisfied the requirement that an act must occur in Delaware, the District Court stated:
Plaintiffs' suggestion that the "tortious act" should be deemed to have occurred where the injury took place would eviscerate the distinction between subsections (c)(3) and (c)(4) of the statute, and must therefore be rejected under generally accepted principles of statutory construction. See Mergenthaler v. State, 239 A.2d 635 (Del.1968).

**\*5** In the light of the above considerations, I conclude that the specific language used in paragraph (3) of § 3104(c), 10 *Del.C.*, requires that both a tortious injury and an act (or omission) causing the injury must occur in Delaware and that the causative act (or omission) in Delaware is distinct from the injury. In view of the evolutionary history of long arm statutes and the well established legislative and judicial precedents which existed prior to enactment of the Delaware statute, including the precedents in the neighboring state of Maryland from which this provision came, it would be inappropriate to ignore the statutory wording in favor of a broad brush rationalization that the paragraph was intended to utilize the due process standard to the utmost.

Turning to the limited facts which plaintiffs have presented in this case which might shed light upon the individual defendants' connection with Delaware, the articles in question were written outside Delaware for their employer, the corporate

defendant, and were edited and published by and presumably distributed by the employer. What control, if any, the individual defendants had over the publication and distribution has not been stated, and it must be assumed that they had none. Upon this state of facts that individual defendants were not present in Delaware nor anyone acting on their behalf, I am unable to attribute a vicarious or fictional presence in Delaware which could satisfy the requirement that an act or omission must have occurred in Delaware. Accordingly, I find that under the facts presented 10 *Del.C.* § 3104(c)(3) does not provide support for personal jurisdiction over defendants Drinkhall and Andrew.

### III

The second paragraph of § 3104(c) which plaintiff relies upon to support Delaware jurisdiction over the individual defendants is paragraph (4). This extends personal jurisdiction over (1) a non-resident who causes tortious injury, (2) where the injury occurred in or outside of Delaware, (3) and was caused by an act or omission outside Delaware, if the non-resident either (a) regularly does or solicits business, or (b) engages in any other persistent course of conduct in Delaware, or (c) derives substantial revenue from services or things used or consumed in Delaware. First of all, in applying this paragraph I take the reasonable literal analytical approach and not merely the broad brush approach.

The Commissioners' Comment pertaining to Section 1.03.(a)(4) of the *Uniform Act,* 13 *ULA* 466,[FN2] which is the same as paragraph (4) of § 3104(c) (except that the Delaware paragraph also covers tortious injury outside of Delaware) states (at page 468):
Section 1.03(a)(4) authorizes the exercise of jurisdiction when the tortious act or omission takes place without the state but the injury occurs within the state and there is some other reasonable connection between the state and the defendant.

... the regular solicitation of business or the persistent course of conduct required by section

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                          Page 5

**Not Reported in A.2d, 1984 WL 247023 (Del.Super.)**
**(Cite as: Not Reported in A.2d)**

1.03(a)(4) need have no relationship to the act or failure to act that caused the injury. No distinctions are drawn between types of tort actions.

**\*6** ... It is not necessary that this activity amount to the doing of business.

This is an alleged tortious injury in that as alleged it is injury resulting from a tort; cf. *Magid v. Marcal Paper Mills, Inc.,* D.Del., 517 F.Supp. 1125 (1981); the alleged tortious injury occurred in Delaware, and it has been determined above the tortious injury was caused by act of the individual defendant outside of Delaware.

With respect to the alternative conditions which must be met in order to qualify under paragraph (4), each individual defendant has submitted an affidavit indicating isolation from Delaware in various respects, including lack of personal presence in Delaware. Plaintiffs have not presented countering facts. Two of the three alternatives relate not to physical presence but to a business or financial relationship to Delaware and do not call for consideration here. The remaining alternative refers to "persistent course of conduct" in Delaware.

With respect to the "persistent course of conduct" alternative, it will be noted that unlike other portions of paragraphs (3) and (4) it makes no reference to an "act" in Delaware. The limitations implicit in § 3104(c)(4) have not been so clearly defined by decision nor so sharply distinguished from the Illinois type reasoning as have been those applying to § 3104(c)(3).

If long arm jurisdiction is to reach individual defendants, plaintiffs must present detailed facts concerning the nature and extent of activities of these defendants conducted within and directed toward this state to assist in applying not only the statutory standard but also the due process standard. Cf. *Waters v. Deutz Corp.,* supra; *Fischer v. Hilton,* D.Del., 549 F.Supp. 389 (1982); *Plumb v. Cottle,* D.Del., 492 F.Supp. 1330 (1980); *Keeton v. Hustler Magazine,* --- U.S. ----, --- S.Ct. ----,

---L.Ed.2d ----, (Slip Opinion, March 20, 1984); *Calder v. Jones,* --- U.S. ----, ---S.Ct. ----, ---L.Ed.2d ---- (Slip Opinion, March 20, 1984); *Thiry v. Atlantic Monthly Company,* supra.

Plaintiffs will be afforded a reasonable time to present facts bearing upon individual defendants' qualification under § 3104(c)(4). Plaintiffs' attorney shall submit a proposal giving course of action and time requirements.

> FN1. (3) causing tortious injury by an act or omission in this state;
>
> FN2. § 1.03.(a)(4) reads:
> (4) causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; [or]

Del.Super.,1984.
Ramada Inns, Inc. v. Drinkhall
Not Reported in A.2d, 1984 WL 247023 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                              Page 1

Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**


C

Telcordia Technologies, Inc. v. Alcatel S.A.
D.Del.,2005.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
TELCORDIA TECHNOLOGIES, INC., Plaintiff,
v.
ALCATEL S.A. and Alcatel USA, Inc., Defendants.
**No. Civ.A. 04-874 GMS.**

May 27, 2005.

Steven J. Balick, John G. Day, Ashby & Geddes, Wilmington, DE, for Plaintiff.
Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Kevin M. Baird, Connolly Bove Lodge & Hutz, Wilmington, DE, for Defendants.

*MEMORANDUM*
SLEET, J.

### I. INTRODUCTION

**\*1** On July 16, 2004, the plaintiff, Telcordia Technologies, Inc. ("Telcordia"), filed this patent infringement action against Alcatel S.A. ("Alcatel S.A.") and Alcatel USA, Inc. ("Alcatel USA"). Presently before the court is Alcatel S.A.'s motion to dismiss for lack of personal jurisdiction. For the following reasons, the court will grant the motion.

### II. BACKGROUND

Alcatel S.A. is a French corporation with its principal place of business in Paris, France. Alcatel S.A. is the parent company of Alcatel USA, a Delaware corporation with its principal place of business in Plano, Texas. (D.I. 18 Ex. 2 ¶¶ 2-3.) It is a holding company that does not manufacture, sell, advertise, offer to sell, trade or import any goods or services in the United States or anywhere in the world. (*Id.* ¶¶ 3-5.) It does not maintain

any offices or other facilities in Delaware, or the United States. (*Id.* ¶ 7.) It neither owns nor leases any real property in Delaware or the United States, but it does own United States patents. (*Id.* ¶ 8.) Alcatel S.A. does not maintain any bank accounts in Delaware and has never contracted to supply services or things in Delaware or the United States. (*Id.* ¶¶ 9-10.)

Telcordia, a Delaware Corporation with its principal place of business in Piscataway, New Jersey, is the assignee and owner of the patent-in-suit, U.S. Patent No. 4,893,306 (the " '306 patent").[FN1] The '306 patent relates to a method and apparatus for multiplexing circuit and packet traffic. The patent discloses a data transmission technique, or Dynamic Time Division Multiplexing ( "DTDM"), that is compatible with the digital circuit transmission format, as well as the packet transmission format, thereby providing "a flexible migration strategy between present circuit networks and future broadband packet networks." (U.S. Patent No. 4,893,306 Abstract.) The complaint alleges that Alcatel S.A. and Alcatel USA have infringed, induced infringement of, and/or contributorily infringed one or more claims of the '306 patent by making, using, offering for sale, selling and/or importing into the United States communication network products embodying the patented invention. (D.I. 1 ¶¶ 13-14.)

> FN1. The '306 patent was issued on January 9, 1990 and assigned to Bell Communications Research, Inc. ("Bellcore"), which became Telcordia in 1999.

### III. STANDARD OF REVIEW

Alcatel S.A. moves to dismiss the complaint for lack of personal jurisdiction over the defendant. " Rule 12(b)(2) of the Federal Rules of Civil Procedure requires a court to dismiss a case when the court lacks personal jurisdiction over the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2

Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

defendant[ ]." *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates,* 197 F.R.D. 112, 119 (D.Del.2000). In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. *Transportes Aeros de Angola v. Ronair, Inc.,* 544 F.Supp. 864-65 (D.Del.1982). If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.* (noting, however, " intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); *Compaq Computer Corp. v. Packard Bell Elec., Inc.,* 948 F.Supp. 338, 342 (D.Del.1996) (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend ' traditional notions of fair play and substantial justice." ' *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citation omitted). Telcordia must show that Alcatel S.A. "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)); *see also Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 108-09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Unless the contacts are continuous and systematic, they must be related to the present cause of action. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414-15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

**\*2** In determining the jurisdictional question, the court must accept as true the allegations in the complaint. *Altech Indus., Inc. v. Al Tech Specialty Steel Corp.,* 542 F.Supp. 53, 55 (D.Del.1982). However, Telcordia, the plaintiff, bears the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over Alcatel S.A. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.,* 147 F.Supp.2d 268, 270-71 (D.Del.2001). To meet this burden, Telcordia must

adduce facts which " 'establish with reasonable particularity" ' that jurisdiction over Alcatel S.A. exists. *Id.* (quoting *Joint Stock Soc'y v. Heublein, Inc.,* 936 F.Supp. 177, 193 (D.Del.1996)).

IV. DISCUSSION

A. Delaware's Long-Arm Statute

The first step in the court's analysis is to determine whether any of the provisions of Delaware's long-arm statute, Del.Code Ann. tit. 10 § 3104, warrant the exercise of jurisdiction over Alcatel S.A. Alcatel S.A. contends that the court has no basis to assert jurisdiction, while Telcordia maintains that the conduct of Alcatel S.A. satisfies the requirements of subsections (c)(1) and (c)(3) of the long-arm statute.

Under subsection (c)(1), the court may exercise jurisdiction over a nonresident or agent of a nonresident who "transacts any business or performs any character of work or service in the State." Del.Code Ann. tit. 10 § 3104(c)(1). Subsection (c)(3) gives the court the authority to exercise jurisdiction over a nonresident or agent of a nonresident who "causes tortious injury in the State by an act or omission in this State." Del.Code Ann. tit. 10 § 3104(c)(3). Delaware courts construe the long-arm statute broadly to confer jurisdiction to the maximum extent possible so as to "provide residents a means of redress against those not subject to personal service within the state." *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156-57 (Del.Super.1997). The Delaware Supreme Court has interpreted subsections (c)(1) and (c)(3) as specific jurisdiction provisions that require a "nexus " between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *See LaNuova D & B, S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986). In order to meet the requirements of subsections (c)(1) and (c)(3), Alcatel S.A.'s actions must be directed at residents of Delaware and the protection of Delaware laws. *Thorn EMI N. Am. Inc. v. Micron Tech., Inc.,* 821 F.Supp. 272, 274 (D.Del.1993).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3

Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Telcordia asserts that the court should exercise jurisdiction under § 3104(c)(1) and/or (c)(3) because Alcatel S.A.'s contacts with Delaware are attributable to its subsidiary, Alcatel USA, under the principles of agency. [FN2] The principles of agency allow a court to establish jurisdiction over the parent based upon its jurisdiction over a subsidiary. Under the agency theory, "the court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction." *C.R. Bard Inc. v. Guidant Corp.,* 997 F.Supp. 556, 559 (D.Del.1998) (citing *Mobil Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260, 266 (D.Del.1989)). Thus, the agency theory "examines the degree of control which the parent exercises over the subsidiary." *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1463 (D.Del.1991). The factors relevant to the court's examination include: (1) "the extent of overlap of officers and directors"; (2) "methods of financing"; (3) "the division of responsibility for day-to-day management"; and (4) "the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant." *Id.* If the court determines that an agency relationship exists, it may attribute certain actions of the subsidiary, Alcatel USA, to the parent corporation, Alcatel S.A., in assessing whether Telcordia has satisfied the requirements of the long-arm statute. *See id.* However, the mere existence of an agency relationship is not sufficient to confer jurisdiction. The court must still apply the Delaware long-arm statute. *See id.* at 1455 ("[A] finding of agency does not render the long-arm statute inapplicable, but simply implicates its 'or through an agent' provision.")

> FN2. Delaware law provides two theories that allow a court to exercise jurisdiction over a parent corporation based on its jurisdiction over a subsidiary: the alter ego theory and the agency theory. *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1463 (D.Del.1991). Under the alter ego theory, the party showing jurisdiction must show fraud or inequity in the use of the corporate form for a court to "pierce the corporate veil," or attribute the actions of a subsidiary to the parent corporation. *Id.; see Mobile Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260, 266 (D.Del.1989). Telcordia has neither asserted the existence of any fraud in the corporate structure of Alcatel S.A. and Alcatel USA nor introduced evidence that would support a finding of fraud. Accordingly, the court will not address this jurisdictional theory.

**\*3** Telcordia contends that Alcatel S.A. should be subject to jurisdiction under the agency theory because "Alcatel S.A. and Alcatel USA are closely knit together, effectively operating as one." (D.I. 20, at 10.) Telcordia alleges the following to support its contention of an agency theory of jurisdiction: (1) Alcatel S.A. makes it abundantly clear that the United States market is very important to it and raises funds in the United States; (2) it owns patents, *i.e.* property, in the United States; (3) it fails to distinguish among its multinational subsidiaries-that is, it consolidates descriptions of its activities with those of its subsidiaries; (4) it chose to incorporate Alcatel USA in Delaware; (5) its Senior Vice President, Mike Quigley ("Quigley") is the CEO of Alcatel USA; and (6) its website solicits requests for information concerning its products, including allegedly infringing products from Delaware residents. (*Id.* at 3-5, 10.) Telcordia further contends that, "at the very least," Alcatel USA has offered to sell in Delaware products accused of infringing the '306 patent and, therefore, transacts business in the state. In addition, because Alcatel USA committed these acts as Alcatel S.A.'s agent, they are attributable to Alcatel S.A. (D.I. 20, at 10.)

Before the court can determine whether it should attribute Alcatel USA's alleged acts in Delaware to Alcatel S.A., it must determine whether an agency relationship exists between the two corporations. As previously stated, in order to make this determination, the court must consider the extent of overlap of officers and directors between Alcatel USA and Alcatel S.A., the methods of financing with respect to the two corporations, the division of responsibility for day-to-day management between

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 4

Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

the two, and the process by which each corporation obtains its business. After having considered these factors, the court concludes that Telcordia has not carried its burden. As to the first factor, Telcordia points to one overlap in officers between the two corporations: Quigley is Senior Executive Vice President of Alcatel S.A. and CEO of Alcatel USA. According to Alcatel S.A., there is a second overlap between the two corporations: its President and COO, Philippe Germond, is a member of the Board of Directors of Alcatel USA. (D.I. 23, at 3; D.I. 22 ¶ 6.) This minor overlap, however, is not dispositive, as "it is entirely appropriate for directors of a parent corporation to serve as directors of a subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *United States v. Bestfoods,* 524 U.S. 51, 69, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) (citations omitted) (noting that it is "well established principle ... that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership"). As such, this factor does not weigh in favor of a finding of agency.

**\*4** Likewise, the remaining factors do not weigh in favor of applying the agency theory in the present case. First, Alcatel S.A. is merely a holding company that does not manufacture, sell, or advertise in the United States, or anywhere in the world. (D.I. 18 ¶¶ 3-5.) Thus, this is not a case in which Alcatel S.A. manufactures a product and uses an independent distributor to sell its product. *Cf. C.R. Bard,* 997 F.Supp. at 561. In addition, Alcatel USA maintains its own executive team, which is responsible for the day-to-day management of Alcatel USA, and no employee of Alcatel S.A. is a member of the executive team of Alcatel USA. (D.I. 22 ¶ 5.) It also maintains its own financial statements, separate from those kept by Alcatel S.A. (D.I. 22 ¶ 10.) Alcatel USA files a consolidated United States federal income tax return that is separate from tax returns filed by Alcatel S.A. (*Id.* ¶ 12.) Alcatel USA finances its day-to-day activities through funds generated from its business activities, including the manufacture, marketing and distribution of the accused infringing products. (*See id.* ¶ 13.) Accordingly, the court finds that while

there is a minor overlap of officers and directors between the parent and subsidiary, Telcordia has not produced sufficient evidence for the court to conclude that the specific combination of agency factors militates in favor of a finding that Alcatel USA was acting as Alcatel S.A.'s agent. Thus, sections (c)(1) and (c)(3) do not warrant the exercise of jurisdiction over Alcatel S.A.[FN3]

> FN3. The court need not address whether jurisdiction in Delaware comports with the requirements of the Due Process Clause because it has no statutory authority under the Delaware long-arm statute to exercise jurisdiction over Alcatel S.A.

### B. Federal Rule of Civil Procedure 4(k)(2)

Telcordia next asserts that, even if the Delaware long-arm statute does not apply in the present case, the court should not grant Alcatel S.A.'s motion to dismiss because it has the authority to exercise personal jurisdiction over Alcatel S.A. pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure. Rule 4(k)(2) provides:
If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Fed. R. Civ. P. 4(k)(2). In order to establish jurisdiction pursuant to Rule 4(k)(2), (1) Telcordia's claim must arise under federal law; (2) Alcatel S.A. must lack sufficient contacts with any state to subject it to personal jurisdiction; and (3) Alcatel S.A. must have sufficient contacts with the United States as a whole to satisfy due process. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,* 229 F.3d 254, 258-59 (3d Cir.2000). Telcordia contends that all three requirements of Rule 4(k)(2) are satisfied. The court disagrees.

First, the parties do not dispute, nor could they, that Telcordia's claims arise under federal law. The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5

Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

complaint alleges that Alcatel S.A. has infringed, induced infringement of, and/or contributorily infringed the '306 patent. Patents and the protection of patent rights are the subject of Title 35 of the United States Code. 35 U.S.C. § 271 specifically provides the elements of patent infringement. Additionally, 28 U.S.C. § 1338 gives district courts original jurisdiction over patent actions. A patent infringement action, therefore, is one that arises under federal law. Telcordia has thus satisfied the first requirement of Rule 4(k)(2).

**\*5** Having found that the first requirement of Rule 4(k)(2) is satisfied, the court next must determine whether Alcatel S.A. is not subject to jurisdiction in any state. *See United States v. Offshore Marine Ltd.,* 179 F.R.D. 156, 160 (D.Vi.1998); *Revak v. Locatum A.B.,* No. Civ. A. 03-4822, 2005 WL 1017771, at \*2 (E.D.Pa. Apr.28, 2005). As a preliminary matter, the court must determine whether Telcordia or Alcatel S.A. bears the burden of proving that Alcatel S.A. is not subject to the jurisdiction of any state. In *Offshore Marine Ltd.,* the United States District Court for the District of the Virgin Islands noted that "[t]he question [of] which party bears the burden of proving ... that the defendant is not subject to jurisdiction in any state appears to be an issue of first impression in this Court and in this Circuit, probably because it is generally the plaintiff's duty to allege and prove personal jurisdiction." *Offshore Marine Ltd.,* 179 F.R.D. at 160. Indeed, it appears that the Third Circuit has not yet addressed whether the plaintiff or defendant bears the burden of proving that the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, or what is known as the negation requirement. *See Base Metal Trading Ltd. v. OJSC "Novokuzetsky Aluminum Factory",* 47 Fed. Appx. 73, 75 (3d Cir.2002) (unpublished) (determining that negation issues need not be reached because the Due Process requirement of Rule 4(k)(2) was not satisfied).[FN4] Various district courts of the Third Circuit, however, have addressed the negation requirement and concluded that the plaintiff bears the burden of demonstrating that the defendant is not subject to jurisdiction in any state. *See Offshore Marine Ltd.,* 179 F.R.D. at 160 ("Accordingly to survive a motion to dismiss for want of personal jurisdiction,

the plaintiff bears the burden to prove that [the defendant] is not otherwise subject to service of process in any state."); *see also Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.,* 293 F.Supp.2d 423, 430 (D.Del.2003), *vacated on other grounds by* 395 F.3d 1315 (Fed.Cir.2005) (issue abandoned on appeal) (" Plaintiffs must also demonstrate that defendant is ' not subject to the jurisdiction of *any* state' under Rule 4(k)(2). Therefore, Rule 4(k)(2) "provides 'a narrow exception which may subject an alien defendant to a federal court's jurisdiction.' ') The court agrees with the Third Circuit district courts that have addressed the negation requirement and concludes that Telcordia bears the burden of demonstrating that Alcatel S.A. is not subject to jurisdiction in any state.

> FN4. Likewise, it appears that the Federal Circuit has not had occasion to address the negation issue.

Here, Telcordia addresses the negation requirement only by asserting that, based on the information provided by Alcatel S.A. in its opening brief and the publicly available information regarding Alcatel S.A., an analysis of whether any other state has personal jurisdiction over Alcatel S.A. would not be "significantly different" from the analysis regarding Alcatel S.A.'s personal jurisdiction under the Delaware long-arm statute. (D.I. 20, at 13.) According to Telcordia, if the court cannot exercise jurisdiction over Alcatel S.A. pursuant to the Delaware long-arm statute then Rule 4(k)(2) applies. (*Id.*) The court is not persuaded by this argument, however, and concludes that Telcordia's conclusory statement does not support a finding that Alcatel S.A. lacks sufficient contacts with any state to subject it to personal jurisdiction. Thus, Telcordia has not satisfied the second requirement of Rule 4(k)(2).

**\*6** Even assuming Telcordia was able to show that Alcatel S.A. was not subject to jurisdiction in any other state, it cannot satisfy the third requirement of Rule 4(k)(2) because the record evidence demonstrates that Alcatel S.A. lacks sufficient contacts with the United States as a whole to satisfy

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 6

Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

due process. The Due Process Clause requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "ha[s] certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of justice and fair play.' ' *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted). In order for the court to find that Alcatel S.A. has "minimum contacts" with the United States, Telcordia must demonstrate either specific or general personal jurisdiction. *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The court can assert specific jurisdiction over a nonresident defendant that has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or related to' those activities." *Burger King,* 471 U.S. at 472 (citations omitted). The court can assert general jurisdiction over a defendant when its contacts with the forum, regardless of their relation to the litigation, are "continuous and systematic." *Helicopteros Nacionales,* 466 U.S. at 416. The court will address the reasons it cannot exercise specific or general jurisdiction over Alcatel S.A. in turn.

When determining whether a defendant's contacts give rise to specific jurisdiction, "[i]t is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum ... thus invoking the benefits and protections of its laws." *BP Chems.,* 229 F.3d at 259 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 475, 100 S.Ct. 559, 62 L.Ed.2d 490). In other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980). Thus, a court usually must determine the character of the defendant's activity in the forum, and whether the plaintiff's claim arises out of or has a substantial connection with that activity. *See Burger King,* 471 U.S. at 475-76. In the present case, however, the court need not make

this determination because Telcordia bases its argument on the specific jurisdiction subsections of the Delaware long-arm statute which, as discussed in Section IV.A., *supra,* do not warrant the exercise of jurisdiction over Alcatel S.A. because Alcatel USA is not its United States agent.

The court also concludes that Alcatel S.A.'s contacts with the United States that are unrelated to the present litigation are not "continuous and systematic" so as to give rise to general jurisdiction. Telcordia contends that general jurisdiction exists because there is "ample evidence of Alcatel S.A.'s contacts with the United States." (D.I. 20, at 12.) According to Telcordia, this evidence includes the following: (1) Alcatel S.A. is listed on the New York Stock Exchange; (2) Alcatel S.A. owns property in the United States, specifically hundreds of patents; (3) Alcatel S.A.'s website fails to distinguish among its multinational subsidiaries and uses its name in the name of its subsidiaries; (4) Alcatel S.A.'s website describes its worldwide activities, including its activities in the United States, but never discloses that its United States activities are performed by one of its subsidiaries; and (5) Alcatel S.A. incorporated its subsidiary, Alcatel USA in Delaware. The court does not find the evidence sufficient to support Telcordia's assertion.

**\*7** First, as previously discussed, Alcatel S.A. is a French holding company that does not make, sell, export or import any products into the United States. Alcatel S.A. does not maintain any offices in the United States, or lease or own any real property in the United States. It does not maintain any bank accounts in Delaware and has never contracted to supply services or things in Delaware or the United States. Alcatel S.A.'s employees also all reside outside of the United States.

Moreover, while Alcatel S.A. is listed on the New York Stock Exchange as an American Depository Receipt ("ADR"), this factor alone does not justify the exercise of jurisdiction. *See Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 244 F.Supp.2d 289, 330 (S.D.N.Y.2003); *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir.2001) (" [T]he Court is not persuaded that Congress intended

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 7

Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

for the courts to assert jurisdiction under Rule 4(k)(2) whenever a corporation lists its stock on a United States exchange."). Likewise, "[o]wnership of a United States patent, without more, cannot support the assertion of personal jurisdiction over a foreign patentee in any state besides the District of Columbia." *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,* No. C-95-3577 DLJ, 1996 WL 467293, at *6 n. 5 (N.D.Cal. July 24, 1996) (citing 35 U.S.C. § 293). Furthermore, incorporating a subsidiary in the United States does not give rise to jurisdiction unless the litigation is related to the act of incorporation and, here, it is not related. *See Applied Biosystems,* 772 F.Supp. at 1468. Additionally, "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conduct activity in the forum, knowingly interacting with residents of the forum state via its web site." *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 454 (3d Cir.2003). Here, Telcordia has not adduced evidence to support a finding that Alcatel S.A.'s web site was intended to reach customers in Delaware, or any other state in the United States. [FN5]

> FN5. Telcordia asserts that there can be " no question that Alcatel S.A.'s website solicits requests for information concerning its products (including allegedly infringing products) from Delaware residents, pointing to a "website page concerning the possible purchase of Alcatel products" with Delaware chosen as the potential buyer's state. (D.I. 20, at 5; Ex. 11.) Telcordia misses the point, however, as the record does not support any documented sales to persons in Delaware (or any other state in the United States). Nor does it support any interaction between Alcatel S.A. and Delaware residents, as the web site page, in Telcordia's own words, demonstrates only the *possible* purchase of Alcatel products.

The court also disagrees with Telcordia's assertion

that Alcatel's website "never discloses that its U.S. activities are performed by some entity (or entities) other than Alcatel S.A." (D.I. 20, at 4.) First, when one enters the Alcatel website and clicks on "United States" as its country/region the web address changes from "www.alcatel.com" to " www.usa.alcatel.com." Further, when one clicks on the "About Alcatel" dropdown menu and selects " Alcatel in the U.S.A.," he or she is provided with information regarding Alcatel USA, including its business locations. Moreover, the web page states " [i]t is the policy of *Alcatel USA* to satisfy the expectation of our customers." www.usa.alcatel .com/company/ausa_info.jhtml (last visited May 23, 2005) (emphasis added). Thus, the Alcatel web site does distinguish Alcatel S.A. from Alcatel USA. This fact does not support the exercise of jurisdiction over Alcatel S.A. Accordingly, Alcatel S.A.'s alleged contacts with the United States do not provide a basis for the court to conclude that it has a "continuous and systematic" presence in the United States.

**\*8** Nor does the combination of Alcatel S.A.'s alleged contacts with the United States provide the court with a sufficient basis to conclude that the requirements for general jurisdiction are met. *BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.,* 229 F.3d 254 (3d Cir.2000) is instructive on this point. In *BP Chemicals,* the Third Circuit found that a foreign defendant did not have sufficient contacts with the United States as a whole to justify the exercise of Rule 4(k)(2) jurisdiction, even though the defendant exported its products to the United States, held a small ownership interest in a Delaware corporation, and entered into contracts requiring its personnel to travel to the United States for training. *Id.* at 263. The Court of Appeals also found that the cumulative effect of the defendants contacts did not meet the requirements for general jurisdiction. In the present case, Alcatel S.A.'s alleged contacts fall short of those alleged by the plaintiff in *BP Chemicals.* As such, the court finds that there is no basis for exercising Rule 4(k)(2) jurisdiction over Alcatel S.A.

C. Jurisdictional Discovery

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 8

Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Lastly, Telcordia asserts that if the court does not conclude that Alcatel S.A. "is subject to personal jurisdiction under the *Delaware long-arm statute*," it should permit limited jurisdictional discovery rather than granting Alcatel S.A.'s motion to dismiss. (D.I. 20, at 11) (emphasis added). Telcordia asserts that its claims against Alcatel S.A. are not clearly frivolous, and that discovery is necessary due to the "limited publicly available information" that it has gathered without discovery. (D.I. 20, at 11.) Telcordia further asserts that the case will not be delayed as a result of any discovery on the personal jurisdiction issue.

Conversly, Alcatel S.A. contends that Telcordia's claims against it are clearly frivolous, because Telcordia has not carried its burden of making "a *prima facie* showing that Alcatel S.A. is subject to personal jurisdiction in Delaware." (D.I. 23, at 17.) In addition, Alcatel S.A. contends that it "strains belief that Plaintiff (1) did not know which entities in the Alcatel Family to sue, and (2) that Alcatel S.A. was not one of them." (*Id.* at 17 .) According to Alcatel S.A., Telcordia has had prior business interactions with Alcatel entities regarding the patent-in-suit, as well as other communications technology. (*Id.* at 2.) Alcatel S.A. further contends that Telcordia is "arguably the most knowledgeable company in the telecommunications field with respect to what products are sold by the various players in the market." (*Id.* at 1.) Thus, it "is hard to believe that it [Telcordia] does not know exactly who the relevant players in the market are." (*Id.*) Lastly, Alcatel S.A. contends that Telcordia is engaging in a fishing expedition, noting that the United States Supreme Court has held that courts should "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." (*Id* at 18-19 (citing *Societe Nationale Industrielle Aerospatiale v. United States District Court for Southern Dist. Iowa,* 482 U.S. 522, 546, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987)). The court is persuaded by Alcatel S.A.'s argument.

**\*9** "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by

allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.' " *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 456 (3d Cir.2003) (internal citations omitted). Thus, resolution of Telcordia's request "begins with the presumption in favor of allowing discovery to establish personal jurisdiction." *Hansen v. Neumueller GmbH,* 163 F.R.D. 471, 474 (D.Del. Oct.5, 1995). However, "[t]he court must be satisfied that there is some indication that this particular defendant is amenable to suit in this forum." *Id.* at 475. For example, "a plaintiff may not rely on the bare allegations in his complaint to warrant further discovery." *Id.* at 476. Likewise, "a mere unsupported allegation that [a] defendant ' transacts business' in an area is 'clearly frivolous.' " *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 107 F.3d 1026, 1042 (3d Cir.1997); *see B.L. Poe v. Babcock Int'l,* 662 F.Supp. 4, 7 (M.D.Pa. Mar.14, 1985) ("Since plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied. It would be inappropriate for this court to allow plaintiff to conduct a fishing expedition in order to construct a basis for jurisdiction."). Rather, "there must be *some* competent evidence to demonstrate that personal jurisdiction over [a] defendant might exist before allowing discovery to proceed." *Hansen,* 163 F.R.D. at 475. Furthermore, "[w]hen the lack of personal jurisdiction is clear, ... further discovery serves no purpose and should be denied." *Hockerson-Halberstadt, Inc. v. Propet USA, Inc.,* 62 Fed. Appx. 322, 338 (Fed.Cir.2003) (unpublished).

Here, as previously discussed in Section IV.A., *supra,* the record evidence regarding Telcordia's agency theory of specific jurisdiction is insufficient to support the conclusion that Alcatel USA was acting as Alcatel S.A.'s agent. In addition, Telcordia did not assert that the court could exercise personal jurisdiction over Alcatel S.A. based on the general jurisdiction subsection of the Delaware long-arm statute. For these reasons, the court believes it is clear that it may not exercise personal jurisdiction over Alcatel S.A. pursuant to the Delaware long-arm statute. Thus, further discovery would not be worthwhile. In other words, granting Telcordia's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 9

Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

request for jurisdictional discovery would amount
to allowing it to conduct a fishing expedition in
order to form a basis for jurisdiction. The court,
therefore, will deny Telcordia's request for
jurisdictional discovery.

*ORDER*

For the reasons stated in the court's Memorandum
of this same date, IT IS HEREBY ORDERED that:
1. Alcatel S.A.'s Motion to Dismiss for Lack of
Personal Jurisdiction (D.I.17) is GRANTED.
2. Telcordia's request for jurisdictional discovery is
DENIED.

D.Del.,2005.
Telcordia Technologies, Inc. v. Alcatel S.A.
Not Reported in F.Supp.2d, 2005 WL 1268061
(D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.